1 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bernard DONEGAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-1632.
 United States Court of Appeals, Sixth Circuit.
 Aug. 2, 1993.
 
 Before KENNEDY and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Bernard Donegan appeals from the District Court's grant of summary judgment affirming the Secretary's denial of social security disability benefits. The issue on appeal is whether substantial evidence supports the Secretary's determination that plaintiff was not entitled to disability insurance benefits prior to December 31, 1988. For the reasons that follow, we affirm.
 
 I. Facts and Proceedings Below
 
 2
 Plaintiff was born on July 11, 1934. He has a ninth grade education. Prior to December 31, 1988, the date his insured status expired, plaintiff had worked for General Motors for 28 years, most recently as a security officer. Plaintiff discontinued work activity on May 21, 1983, because of arthritis in his knees.
 
 
 3
 On November 29, 1983, plaintiff filed his first claim for disability insurance benefits alleging disability as of May, 1983 due to osteoarthritis of the left knee. This application was denied initially and upon reconsideration on February 9, 1984.[1] Donegan did not seek an administrative review of the reconsideration, thereby allowing the Secretary's decision to become final and binding. Consequently, the finding that Donegan was not disabled as of February 9, 1984, is res judicata. See Siterlet v. Secretary of Health and Human Services, 823 F.2d 918 (6th Cir.1987). Therefore, plaintiff's current claim is confined to establishing disability between February 10, 1984 and December 31, 1988 (the date his insured status expired).
 
 
 4
 Donegan filed his current (second) application for disability insurance benefits on February 24, 1989, again alleging that he became disabled in May of 1983 due to osteoarthritis (of the knees, arms, and hands) and poor circulation in his legs. This claim was denied initially and upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). At the hearing held on July 17, 1990, plaintiff testified as to the pain in his knees caused by his arthritis. Specifically, plaintiff stated that he could only sit for a half an hour at a time and stand for fifteen minutes at most; that he could not sit all day because of the pain; that sometimes when he walked too much his legs would lock and he would fall; that he used crutches for balance as well as to alleviate the pain; and that on a scale of one to ten, his pain was between 8-9.
 
 
 5
 Dr. Robert A. Sobel, a medical expert, rendered his opinion at the hearing. He relied on the opinion of plaintiff's treating physician, Dr. Eric Borofsky, in formulating his own view of plaintiff's work capabilities, and found that Donegan's impairment was severe but nevertheless compatible with employment of a sedentary nature, even as late as June or July of 1989. Sobel did state, however, that such work was to involve only very limited standing, squatting, kneeling or bending, and no climbing.
 
 
 6
 Elaine M. Tripi, a vocational expert ("VE"), also testified at the hearing. During her testimony, the ALJ posited a claimant of Donegan's age, education, work experience and skills suffering from degenerative joint disease of the knees, having undergone arthroscopic surgery in November 1983, not able to stand very often or squat, kneel, bend or climb ladders or stairs, who could lift up to ten pounds occasionally and up to one pound on a more frequent basis. The VE responded that such a claimant would be unable to perform plaintiff's past relevant work, but could perform work as a sedentary security monitor. Tripi testified that approximately 2,000 such jobs existed in the Detroit Metropolitan area and 4,000 existed in the state of Michigan. The VE further testified that when giving full credibility to the claimant's testimony as to pain and his need to elevate his leg above his waist for most of the day, the claimant would not be able to perform either his past relevant work or sedentary work.
 
 
 7
 After reviewing the medical records of Dr. Borofsky and the testimony presented at the hearing, the ALJ found that plaintiff "was capable of sedentary work activities as of December 31, 1988 which involved very little standing and no bending, squatting or climbing and frequent changes of position." Joint App. at 25. Additionally, the ALJ made the following specific findings:
 
 
 8
 (1) The [plaintiff] met the disability insured status requirements of the Act on May 21, 1983, the date he stated he became unable to work, and continued to meet them through December 31, 1988.
 
 
 9
 ....
 
 
 10
 (3) The medical evidence established that [plaintiff] has severe osteoarthritis of the knees and pain; [however, he did not have an impairment that met or equaled the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1992) ].
 
 
 11
 (4) The intensity, frequency, and duration of [plaintiff's] alleged discomfort and dysfunction cannot be credited in consideration of his demeanor, inconsistent and variable complaints activities, and absence of clinical findings demonstrating any medically determinable condition which could reasonably be expected to produce disabling symptoms.
 
 
 12
 (5) The [plaintiff] has the residual functional capacity to perform the physical exertion requirements of work except for prolonged standing or walking, lifting over 10 pounds, bending, squatting, climbing, or performing work not allowing for a sit/stand option.
 
 
 13
 (6) The [plaintiff's] past relevant work as a security officer ... did not require the aforementioned limitations.
 
 
 14
 (7) The [plaintiff] has the residual functional capacity to perform the full range of sedentary work.
 
 
 15
 ....
 
 
 16
 (10) In the alternative, [plaintiff] has acquired such work skills, which he demonstrated in past work. Considering his residual functional capacity, these skills can be applied to meet the requirements of semi-skilled work activities of other work which exists in significant numbers in the national economy. Examples of such jobs are sedentary security jobs. Thousands of appropriate jobs were enumerated by the vocational expert.
 
 
 17
 Joint App. at 27-28.
 
 
 18
 On the basis of these findings, the ALJ concluded that Mr. Donegan was not disabled within the meaning of the statute. On July 22, 1991, the ALJ's decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review. Plaintiff appealed the Secretary's decision to the United States District Court for the Eastern District of Michigan. The matter was referred to a magistrate judge who concluded that there was not substantial evidence to support the ALJ's decision. Consequently, the magistrate judge recommended that the Secretary's decision be reversed and that the plaintiff's motion for summary judgment be granted. On April 14, 1992, the District Court rejected the Magistrate Judge's Report and Recommendation, and issued a decision affirming the Secretary's denial of disability insurance benefits.
 
 II. Standard of Review
 
 19
 In reviewing the ALJ's decision denying benefits, this Court will affirm if the findings are supported by substantial evidence. Walker v. Secretary of Health and Human Services, 980 F.2d 1066, 1070 (6th Cir.1992). " 'Substantial evidence' means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Secretary's determination is supported by substantial evidence it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 20
 To qualify for disability insurance payments, a claimant must demonstrate that he suffers a physical or mental disability within the meaning of the Act and that the disability arose before the expiration of the claimant's insured status. 42 U.S.C. Sec. 423; Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 926 (6th Cir.1987). Specifically, the claimant must demonstrate that he is unable to engage in any substantial gainful activity by reason of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A). If the claimant is working, benefits are automatically denied. 20 C.F.R. Sec. 404.1520(b). If a claimant is not found to have an impairment which significantly limits his ability to work (a severe impairment), then he is not disabled. 20 C.F.R. Sec. 404.1520(c). Since the ALJ found that plaintiff has not worked since May 21, 1983 and has severe osteoarthritis of the knees accompanied by pain, further inquiry was necessary. If a claimant is not working and has a severe impairment, it must be determined whether he suffers from one of the "listed" impairments. 20 C.F.R. Sec. 404.1520(d). If so, benefits are owing without further inquiry. In the present case, the ALJ found that plaintiff did not suffer from one of the listed impairments. In such a case, assuming the claimant has previously worked, the Secretary must next decide whether the claimant can return to his previous job. 20 C.F.R. Sec. 404.1520(e). If the claimant can show that his impairment prevents him from performing his past work, the burden of proof shifts to the Secretary to establish claimant's ability to perform other work. Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1173 (6th Cir.1990). The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 20 C.F.R. Sec. 404.1520(f)(1). Therefore, this Court must determine whether substantial evidence supports the Secretary's finding that plaintiff has the residual functional capacity to perform sedentary security jobs.
 
 III. Disability Due to Pain
 
 21
 Plaintiff argues that he is unable to perform his previous work or any other sedentary work due to debilitating pain. This Court has recognized that pain may be intense enough to disable without objective medical evidence to establish its severity. King v. Heckler, 742 F.2d 968, 974-75 (6th Cir.1984); Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 386 (6th Cir.1978). However, the pain must be of such a debilitating degree that it prevents a claimant from engaging in substantial employment. Kirk, 667 F.2d at 539. Specifically, with regard to subjective allegations of disabling pain, this Court engages in the following analysis:
 
 
 22
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 23
 Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986). In the present case, the ALJ found objective medical evidence to support the existence of an underlying condition: osteoarthritis. However, there is little or no objective medical evidence tending to confirm that the pain attributed to this condition is disabling.
 
 
 24
 It is undisputed that Mr. Donegan suffered from osteoarthritis, especially in his knees. In November 1983, plaintiff underwent arthroscopy which showed his condition as severe. However, Dr. Kamil reported one month later that plaintiff could perform sedentary work. In March of 1984, Dr. Kamil examined x-rays that showed plaintiff had severe arthritis, yet again he reported plaintiff could perform sedentary work. Dr. Borofsky, an orthopedic surgeon, began treating plaintiff in the summer of 1984. His progress notes from plaintiff's August 8, 1984 visit reflect that the pain in plaintiff's knees was greatly diminished as a result of his taking Motrin. Although by November of 1984, plaintiff's joints were stiffer, his knee pain had not returned and his daily living activities were not impaired. Motrin continued to provide relief and Dr. Borofsky reported that plaintiff's condition was essentially unchanged through August 1985. In his progress notes for December 17, 1985, Dr. Borofsky stated that although plaintiff's knee discomfort had increased somewhat, he could still perform many of his normal ambulatory activities.
 
 
 25
 Similarly, on March 18, 1986, Dr. Borofsky noted in his report that Donegan had done "very, very well" for the preceding few months on Motrin. He was able to flex and extend his knee better than he had done upon his first visit to Dr. Borofsky, although he still had degenerative arthritis. Donegan did not see Dr. Borofsky again until June of 1989. On July 14, 1989, Dr. Borofsky reported that plaintiff's "knee stopped hurting recently and no longer gives him any problems because he has been resting." Joint App. at 194. Dr. Borofsky further noted that plaintiff could not return to his customary activities if they involved periods of standing, flexing, squatting, etc.
 
 
 26
 Donegan contends that the ALJ did not give due deference to Dr. Borofsky's July 1989 report. In filling out an External Limitation and Pain Questionnaire describing Donegan's knee condition as it existed in December of 1988, Dr. Borofsky opined that plaintiff was "in constant pain. Instability in knees and necessity to change positions and elevate legs make any type of competitive work infeasible." Dr. Borofsky marked that plaintiff was incapable of sedentary work. It is well settled that in determining whether a claimant is entitled to disability benefits, the medical opinions and diagnoses of treating physicians are entitled to great weight and, if uncontradicted, are entitled to complete deference. Walker, 980 F.2d at 1071; Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 529 (6th Cir.1992); King, 742 F.2d at 973. The ultimate determination of disability, however, is the prerogative of the Secretary, not the treating physician. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984). The Secretary is not bound by conclusory statements of doctors particularly where they are unsupported by detailed objective criteria and documentation. Cohen, 964 F.2d at 528. This Court has held that an ALJ may reject a treating physician's determinations "when good reasons are identified for not accepting them." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988).
 
 
 27
 Here, Dr. Borofsky drafted an addendum to his July, 1989 report (in which he stated plaintiff was incapable of performing sedentary work). This addendum states:
 
 
 28
 I did not believe that [Donegan] would be able to perform ambulatory activities. To be more specific, I do not believe that he should be on his feet for more than one-half hour at a time and that he probably should be allowed to elevate his leg, at least several hours during an 8 hour day at work.
 
 
 29
 I believe that Mr. Donnigan [sic] does retain the capacity to return to a full-time type of job but, again, it should be within the restrictions of a sedentary type activity or one that would limit the amount of standing, squatting, kneeling, bending, etc. that he has to very, very minimal periods of the day, if at all. I believe that this functional limitation has been present at least since 1988 and somewhat before that as well.
 
 
 30
 Joint App. at 211. Thus, considering all of the treating physicians' reports and Dr. Borofsky's addendum, the objective medical evidence does not confirm plaintiff's allegation of disabling pain.
 
 
 31
 As to the second prong of the Duncan analysis, there is substantial evidence supporting the ALJ's decision that plaintiff's objectively established medical condition is not of such a severity that it can reasonably be expected to produce the alleged disabling pain. Absent detailed corroborating medical evidence, this Court will generally defer to the ALJ's assessment. Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 230 (6th Cir.1990). Several reasons support such deference here.
 
 
 32
 First, this Court has made clear that mildly degenerative arthritis is not necessarily so severe a condition as to reasonably be expected to produce disabling pain. Blacha, 927 F.2d at 231; Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 713 (6th Cir.1988); Duncan, 801 F.2d at 853-54. While the medical evidence establishes that plaintiff in this case has severe degenerative osteoarthritis, plaintiff did not present any evidence of "muscle atrophy, typically associated with severe pain, and no neurological defects were shown." Blacha, 927 F.2d at 231; Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1369-70 (6th Cir.1991) (reliable evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption).
 
 
 33
 Second, Mr. Donegan's use of only mild medications (Motrin) undercuts complaints of disabling pain, as does his failure to seek treatment from March of 1986 until June of 1989. Id. Furthermore, the ALJ found that some of Donegan's activities were inconsistent with his claims of disabling pain. "As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain." Id. Plaintiff's testimony disclosed that between 1983 and 1988 he drove his car once or twice a week; he sometimes cut the lawn with a self-propelled mower; he attended Elk's meetings twice a month; he spent time exercising in the pool; and he would sit and watch television.
 
 
 34
 Third, the ALJ, after observing plaintiff's condition and demeanor during the hearing, concluded that his claims of disabling pain were not credible. Specifically, the ALJ stated that "the evidence as a whole, including the testimony of the claimant, the medical records, and observations of the claimant confirm that he was able to concentrate well; he maintained a good attention span which indicated that neither his pain nor medication was [sic] interfered with his ability to function." Joint App. at 27. This Court will not disturb the ALJ's credibility determinations on such factual matters. Sizemore, 865 F.2d at 713; Duncan, 801 F.2d at 852 (recognizing that with regard to subjective allegations of disabling pain, "the ALJ's opportunity to observe the demeanor of the claimant is invaluable and 'should not be discarded lightly' ").
 
 
 35
 Consequently, we find that, applying the Duncan test to the case at bar, the Secretary's denial of benefits is supported by substantial evidence.
 
 IV. Ability to Perform Other Work
 
 36
 The evidence further establishes that despite plaintiff's osteoarthritis, he is capable of engaging in substantial gainful employment. Assuming plaintiff could not return to his previous work, the burden of proof shifted to the Secretary to show there was other employment in the national economy plaintiff could perform. The vocational expert testified at the hearing that the skills acquired by plaintiff while a security guard at General Motors were transferable to security work of a sedentary nature. She testified that sedentary security work probably would include monitoring security screens, manning a security desk and monitoring individuals.
 
 
 37
 Plaintiff contends that the Secretary erred in finding he had the capacity to perform such a sedentary job because the ALJ failed to consider the requirement he be able to elevate his legs. Donegan, however, presented no evidence of chronic swelling, fluid retention or of any circulatory problems in his legs during the relevant time period. Dr. Borofsky's May 1990 report indicates only that Donegan probably should be allowed to elevate his leg for several hours during the work-day. The ALJ also relied on the testimony of Dr. Sobel that individuals suffering from this type of osteoarthritis benefit from frequent changes of position, and that plaintiff's condition would not necessarily require elevation of the legs. Additionally, the vocational expert testified that, taking into account plaintiff's skills and limitations, he could work as a sedentary security monitor. She further testified that approximately 2,000 such jobs existed in the Detroit Metropolitan area and 4,000 existed in the State of Michigan. Plaintiff's treating physicians, Dr. Kamil and Dr. Borofsky, also testified that plaintiff could perform sedentary work even though limited by his need for a sit/stand option. See Hall v. Bowen, 837 F.2d 272 (6th Cir.1988) (claimant not disabled simply based on a need to alternate between sitting, standing, and walking if VE has identified more than 1,350 unskilled sedentary jobs that could be performed with claimant's limitations). Thus, substantial evidence on the record as a whole supports the finding that Donegan is capable of performing sedentary work of a type that exists in the Detroit Metropolitan area and in the national economy.
 
 V. Side-Effects of Medication
 
 38
 Plaintiff's final contention is that he has to take medication (Tylenol 3) to alleviate the pain and that this medication makes him drowsy and therefore unable to work. Several courts have recognized that like pain, the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process. See e.g., Varney v. Secretary of Health and Human Services, 846 F.2d 581, 585 (9th Cir.1988), modified on other grounds, 859 F.2d 1396 (9th Cir.1988). In the case at hand, however, there is no objective medical evidence supporting claimant's allegations that the medicine makes him so drowsy he is unable to work. His treating physicians only restricted him from standing too long, squatting, kneeling, bending, and climbing. Therefore, in light of the lack of medical evidence supporting plaintiff's claim of disabling side-effects, the ALJ's findings that Donegan is not disabled and can perform other sedentary work are supported by substantial evidence.
 
 VI.
 
 39
 Accordingly, we AFFIRM the District Court's granting of summary judgment for the Secretary regarding the Secretary's denial of disability benefits to Donegan.
 
 
 
 [1]
 The Secretary based its decision on the report of Dr. R.S. Kamil, who had treated the plaintiff from October 1983 through June 1984. While describing plaintiff's osteoarthritis as "extensive," Dr. Kamil nevertheless believed that plaintiff was capable of holding a sedentary job, so long as he did not have to squat, walk on surfaces that were not level, or climb ladders or stairs