John F. WALKER, Plaintiff–Appellant,

v.

**SECRETARY OF HEALTH
AND HUMAN SERVICES,**
Defendant–Appellee.

No. 91–2396.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1992.
Decided Dec. 7, 1992.

Ronald D. Honig (argued and briefed), Weisberg & Walkon, Southfield, Mich., for plaintiff-appellant.

Carole Kohn (argued and briefed), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill.,

Peter A. Caplan, Asst. U.S. Atty., Detroit, Mich., for defendant-appellee.

Before: MARTIN and SILER, Circuit Judges; and DOWD, District Judge.*

DOWD, District Judge.

John Walker (hereafter "Walker") appeals from the denial of disability insurance benefits contending that the Administrative Law Judge (hereafter "ALJ") failed to give due deference to the opinions of various treating physicians. Walker also argues that the ALJ failed to consider all of Walker's functional limitations in reaching his decision; specifically, the ALJ did not consider Walker's limitations in the mental residual functional capacity.

FACTS AND PROCEEDINGS BELOW

Walker was born on February 24, 1946 and was 44 years old on the date the Secretary of Health and Human Services (hereafter "Secretary") rendered his decision. Walker had received a GED and previously worked as a bore operator, assembly worker, and press operator in a General Motors factory. Walker discontinued work activity in January, 1987, due to pain resulting from a back injury in December, 1986, as well as due to a previously experienced condition of depression and anxiety.

He received evaluation, medical treatment, and physical therapy for his back injury at the Pain Management Clinic of the University of Michigan Medical Center in July, 1987. Two neurosurgeons at the Pain Management Clinic, Dr. James C. Chen and Dr. Julian T. Hoff, reported that CT scans, myelogram and sensory and motion examinations of Walker's back were negative, but that Walker's range of motion was limited and that he suffered from myofascial pain syndrome. Walker was then referred to the Michigan Medical Center Coordinated Chronic Pain Program (hereafter "Pain Program") for follow-up therapy.

Doctors at the Pain Program examined and evaluated Walker on July 29, 1987, and the neurological examination revealed no motor, sensory, or reflex deficits. The doctors diagnosed a "moderately severe myofascial pain syndrome of his lower back musculature" and recommended medication and physical therapy consisting of stretching exercises and icing.

The doctors at the Pain Program reported improvement in Walker's condition under their care from August 11, 1987, through December 16, 1988. In September, 1987, his pain was said to be less intense, and Walker, himself, noted that he was doing better and had more endurance but complained that he continued to have episodes of more severe pain. In February, 1988, Walker's physicians at the Pain Program reported that his pain was "fairly well controlled." By June, 1988, Walker still complained of constant pain, but was able to sit for a two hour period with one short break after approximately one hour; could tolerate standing (with frequent weight shifting, bending and stretching) for two hours; and could walk three quarters of a mile.

Dr. Robert Rogers, an orthopedist, examined Walker at the request of the doctors at the Pain Program and reported that Walker suffered from low back syndrome but also found that there was no evidence of acute distress. Dr. Rogers noted that Walker's major medical problem was his depression. It is undisputed that Walker suffered from depression prior to his back injury.

On October 19, 1988, Walker applied for disability insurance benefits under the Social Security Act (42 U.S.C. § 416(i) and § 423). The application was denied. Following an unfavorable reconsideration determination, Walker filed a timely request for a hearing. A hearing was held before Administrative Law Judge John W. Hoffman on January 8, 1990, at which time testimony was received from Walker and from Dr. Charles Oliver (hereafter "Dr.

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Oliver"), the ALJ's vocational expert. The ALJ issued a decision on March 29, 1990 denying the claim for benefits. A request for Appeals Council Review was filed May 25, 1990. On January 24, 1991, the Appeals Council denied review of the claim.

A complaint was then filed in the United States District Court for the Eastern District of Michigan and was referred to a Magistrate–Judge. The district court issued an order adopting the Magistrate–Judge's Report and Recommendation, granting the Secretary's motion for summary judgment and denying Walker's motion for the same. Walker then filed a timely notice of appeal to this Court for review.

## THE ALJ's DECISION

The ALJ had the benefit of numerous expert medical opinions to assist him in rendering a decision. Dr. T.W. Park, Walker's treating psychiatrist, reported that Walker was very tense, depressed and unhappy. Dr. Park noted in his report that Walker expressed feelings of uselessness and worthlessness, and entertained thoughts of suicide. It was noted that Walker has few friends, and is not able to make friends without great difficulty. Formal psychiatric evaluation conducted by Dr. Park also found memory impairment.

Further, based upon an August 14, 1989 evaluation of Walker, Dr. Park concluded that Walker would have no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress, or relate predictably in social situations. A serious limitation was foreseen in Walker's ability to relate to co-workers; use judgment; maintain attention and concentration; understand, remember and carry out complex, and detailed, or simple job instructions; behave in an emotionally stable manner; or demonstrate reliability. The treating psychiatrist indicated that, overall, the prognosis was poor. It was Dr. Park's opinion that Walker remains totally disabled from his occupational duties due to a major depressive disorder.

Dr. Nikhil Vora, a consulting psychiatrist, evaluated Walker on January 6, 1989.

Dr. Vora, substantially corroborating Dr. Park's opinion, reported that Walker had experienced a significant loss of self-esteem, psychomotor retardation, and poor insight and memory. Dr. Vora also agreed with Dr. Park's laundry list of tasks that were common to the work place, such as following orders and getting along with co-workers, that Walker could no longer perform.

In reaching his opinion, Dr. Vora used the criteria set out by the American Psychiatric Association, and reported a poor level of functioning on Axis V. According to Dr. Vora, poor characterization in Axis V is indicative of a marked impairment in either social relations or occupational functions, or a moderate impairment in both.

Walker's file was also examined by two State Agency Review Psychiatrists. Both State Agency Review Psychiatrists found that Walker had a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; and would often have deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner. The State's doctors also found a moderate limitation in Walker's ability to maintain attention for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Dr. Charles Oliver testified at the hearing as the ALJ's vocational expert. During the hearing, the ALJ posed a two part hypothetical question to Dr. Oliver using many of the facts contained in the other experts' reports. The first part of the hypothetical involved Walker's physical traits, such as age, occupation, and lower back pain. Based upon only those facts, Dr. Oliver concluded that the fictitious subject would only be able to return to work as a press operator because it involved moderate effort and lifting. Such an individual

could not return to operating a bore, as that often required heavy lifting.

The ALJ then posed the second part of the hypothetical, adding findings from the report prepared by Dr. Park including good to fair ratings in the area of judgment, following instructions, and behaving in an emotionally stable manner; and poor ratings in the area of coping with work related stress, interacting with management and co-workers, and relating predictably in social situations. Adding these facts to the original hypothetical, Dr. Oliver opined that the individual in question was not employable in any capacity.

Walker was the only other witness to testify before the ALJ. He testified that it was the combination of back pain and depression that caused him to seek medical leave on January 13, 1987. He further testified that on a good day, when he is feeling well, he will spend one to two hours working on his computer, he will sometimes drive to a friend's house to visit, he will fix himself a bowl of cereal for lunch, and his girlfriend will fix his dinner. When he is not feeling well, however, he testified that he spends 90% of his day "staring at the walls." (p. 64). He also indicated that he is usually in a great deal of pain, and is unable to do any housework. (p. 64).[1]

As part of his decision, the ALJ found that Walker suffered from "moderately severe myofascial pain syndrome." The ALJ, however, ruled against Walker finding that he was not disabled as he could return to his former work as a press operator. The ALJ explained that while being a bore operator involved heavy lifting and a great deal of exertion, his former job required only moderate exertion which he believed Walker could still do.

The ALJ indicated that he did not believe he was bound by the opinion of the treating physician, Dr. Park, because it was incon-

sistent with the medical testimony. He relied on the treatment reports from the University of Michigan Medical Center and the Pain Program which indicated that with therapy and medication, Walker's back condition had improved, and that the introduction of a TENS unit, and home exercise further reduced the pain he experienced. The ALJ also relied on a mental residual functional capacity assessment which states that Walker is capable of low stress work, consistent, ALJ claimed, with the conclusion reached by Dr. Oliver.

The ALJ also stated that he found Walker's testimony of debilitating pain and severe depression to be incredible. In reaching this conclusion, the ALJ stated that it was his belief, based on contradictory clinical findings that Walker had a tendency to exaggerate his claims of pain.[2] The ALJ also indicated that he was reluctant to place much emphasis on the reports of the psychiatrists because psychiatric evaluations are "solely based upon subjective complaints of an individual and totally controlled by that individual." (p. 18).

In sum, the ALJ examined both Walker's mental and physical impairments and found that neither was sufficient to justify a finding of disability. He emphasized that Walker's back condition continued to improve with time. As for Walker's mental condition, the ALJ highlighted the fact that Walker had worked in the past despite the problem. This, the ALJ felt, suggested that Walker's mental deficiencies were not significant enough to render him impaired.

### STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment *de novo*. *Leila Hosp. & Health Ctr. v. Xonics Medical Sys., Inc.*, 948 F.2d 271, 273 (6th Cir.1991); and *E.E.O.C. v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990).

---

1. In response to the ALJ's question regarding the length of time he can stand, taking minimal breaks, Walker initially answered:

    A. Most of the time I force myself to continue moving. The pain—regardless of the degree of pain, I force myself to move. For eight hours I could move continuously, but if someone were to attempt to stop me from my

    goal, I would do anything in my power to kill them if necessary to continue on my route. (District Court Transcript Exhibit p. 54).

2. In his report, Dr. Rogers also stated that it was his belief that Walker exaggerates his complaints of pain.

In reviewing the ALJ's decision denying benefits, a court will affirm if the findings are supported by substantial evidence. Substantial evidence is that which is greater than a scintilla but less than a preponderance. In essence, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See also Foster v. Bowen*, 853 F.2d 483 (6th Cir.1988); *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922 (6th Cir.1987); and *King v. Heckler*, 742 F.2d 968 (6th Cir.1984). In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

In order to qualify for disability benefits offered by the Social Security Administration, the claimant must demonstrate that he is unable to engage in any substantial gainful activity by reason of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *See also King, supra;* and *Kirk, supra.*

In determining whether the claimant is disabled, the Secretary will look at all material facts. 20 C.F.R. § 404.1520(a). If the Secretary finds that the claimant is doing substantial gainful activity or that the claimant does not have a severe impairment, the evaluation ends and the claimant is automatically determined to be not disabled. 20 C.F.R. § 404.1520(b) & (c). If the claimant is not engaged in substantial gainful activity and suffers from a severe impairment(s), then the Secretary turns to the list of impairments set out in 20 C.F.R. § 404.1520, Subpart P, Appendix 1. If the claimant's impairment(s) meets or equals a listed impairment then the claimant is automatically adjudged disabled. If claimant's impairment(s) does not satisfy the list found in Appendix 1, the Secretary will review the claimant's residual functional capacity and the physical and mental demands of the work he has done in the past.

It is undisputed that neither Walker's back injury nor his mental impairment satisfy any of the listed impairments in Appendix 1; thereby requiring consideration of Walker's residual functional capacity.

## TREATING PHYSICIAN RULE

Walker claims that the ALJ did not give due deference to the medical opinion of his treating psychiatrist, Dr. Park, who surmised that Walker was totally disabled. The medical opinion of the treating physician is to be given substantial deference—and, if that opinion is not contradicted, complete deference must be given. *King, supra* at 973. *See also Hardaway, supra* at 927. The reason for such a rule is clear. The treating physician has had a greater opportunity to examine and observe the patient. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Schisler v. Heckler*, 787 F.2d 76, 85 (2d Cir.1986). It is true, however, that the ultimate decision of disability rests with the administrative law judge. *King, supra* at 973.

The ALJ chose to disregard the opinion of Dr. Park, Walker's treating psychiatrist, on the grounds that his opinion was contradicted by other medical evidence in the record. The ALJ points to the progress that Walker had made at the Pain Program in reducing his back pain, and the relative success of the introduction of an antidepressant drug into Walker's medical program.

If the medical evidence was contradictory then our review would go no further. It is evident from the record that the evidence is not necessarily inconsistent or contradictory. It is true that Dr. Chen and Dr. Hoff indicated in their reports that Walker's back pain was lessening over time. These

two doctors did not, however, address Walker's mental impairment. Their concern was treating the back injury, and as such, they did not evaluate Walker's mental condition or seek to determine how his depressive condition, on top of the pain he was experiencing from his back injury, would affect his ability to earn a living.

Similarly, Dr. Rogers, Walker's orthopedist, indicated that Walker's back had dramatically improved over time. He noted, however, that Walker's most significant problem was his chronic depression. Dr. Rogers offered no opinion with respect to Walker's ability to return to work.

The mere fact that certain doctors reported that Walker's physical impairment had improved is not contradictory to a finding of disability. In reaching a determination as to disability, the ALJ is to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled. 20 C.F.R. § 404.1523. It is undisputed that prior to Walker's back injury, he was able to engage in substantial gainful activity despite his mental impairment. Further, Walker does not contend that his back injury, standing alone, qualifies him for disability status. It is the combination of the two, Walker claims, that has created a situation where he can no longer function in the work place.

This is evident from the testimony of Dr. Oliver, the ALJ's vocational expert. The ALJ posed a two part hypothetical. When asked to assume the facts in the first half of the ALJ's hypothetical, which only dealt with the circumstances surrounding Walker's back injury, Dr. Oliver concluded that the subject was still employable as a press operator, as that task required only moderate lifting. In the second half of the hypothetical, the ALJ asked him to also assume the facts surrounding Walker's mental condition. Dr. Oliver testified that any individual who suffered from both the back injury and this particular mental condition was totally unemployable.

The ALJ rejected this testimony and that of the treating physician, Dr. Park, choosing rather to rely on the opinion of doctors who were only asked to examine one of Walker's impairments. In doing so, the ALJ looked at each impairment in a vacuum and made two separate determination as to whether each one, separately, would qualify Walker for disability. Based on the testimony of the University of Michigan doctors, the ALJ determined that Walker's back injury did not render him disabled. Further, based on the fact that Walker was able to work in the past despite a recurring case of depression, the ALJ determined that Walker's mental impairment did not render him disabled. Since neither impairment was sufficient, in and of itself, to render Walker disabled, the ALJ ruled that Walker was not disabled.

The ALJ failed to consider the combined effect of both impairments on Walker's ability to function, as mandated by the Social Security Act. 20 C.F.R. § 404.1523. Had the ALJ considered the evidence in this manner, he would have concluded that the findings of the treating physician were not contradictory, and were entitled to substantial, if not complete, deference.[3]

It is worth noting that, although not emphasized in the ALJ's report, Walker's Residual Functional Capacity Assessment represented some evidence that conceivably contradicted the treating physician's opinion. The Court refuses to give dispositive weight to this report, however, in light of

---

3. The ALJ also found that Walker's testimony was incredible. It is true that the ALJ's conclusion with respect to credibility is "not to be discarded lightly and should be accorded deference." *Hardaway, supra citing Houston v. Secretary of Health and Human Services,* 736 F.2d 365, 367 (6th Cir.1984). Had the ALJ performed the proper analysis, Walker's testimony would not have appeared to be exaggerated or contradictory. Additionally, the ALJ should not have discounted the psychiatric evidence in such a cavalier manner simply because it was based on "subjective complaints of [the claimant]." This Court has recognized the value of psychiatric reports, while also recognizing that such reports do not easily lend themselves to the same degree of substantiation as other medical impairments. *Blankenship v. Bowen,* 874 F.2d 1116 (6th Cir. 1989).

the fact that it was prepared by a physician who neither treated nor examined Walker. The only research done in the preparation of this report was a review of Walker's medical file. Further, the doctor who prepared the report[4] did not advance his reasons for disagreeing with the opinion rendered by the treating physician, as is required on the face of the form.

### CONCLUSION

The Court finds that the evidence taken as a whole, and considered pursuant to the dictates of the Social Security Act, leads to the inevitable conclusion that Walker is totally and permanently disabled. As there is no substantial evidence to support the ALJ's findings, the denial of benefits by the District Court is reversed. This case is remanded to the District Court for the purpose of awarding benefits.

---

**4.** While the doctor signed the report, his signature is illegible.