7 F.3d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William LASHEN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-3936.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1993.
 
 Before: KEITH and RYAN, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 William Lashen appeals the denial of disability benefits. We conclude that substantial evidence does not support the Secretary's findings, and that the record compels a finding of disability. We therefore reverse the decision of the Secretary as affirmed by the district court, and remand this case to the district court with directions to remand to the Secretary for an award of benefits.
 
 I.
 A.
 
 2
 William Lashen was born in 1931 and was employed for 35 years by U.S. Steel as a remote train operator.
 
 Eye Injury
 
 3
 Lashen sustained an on-the-job injury in March 1982 when an explosion caused molten slag to splash the left side of his face, blinding him in his left eye and causing second- and third-degree burns to his ear and neck. The area around his eye was burned so severely that the lower eyelid healed inverted. His eyelashes now grow into the eye and have to be plucked every two to three months. Lashen did not return to work at U.S. Steel following his injury, and was determined by the company to be totally and permanently disabled from employment.
 
 
 4
 Lashen has had a corneal transplant and additional eye surgery to reconstruct the eyelids and graft mucous membrane. Further surgery is not contemplated because the benefit potential is not worth the risk to the already compromised eye. He has light perception in the left eye but can only count fingers at a distance of one foot. The damage to the eye resulted in considerable scarring, destroying most of the mucous and water secreting cells of his eyelid. Lashen suffers frequent attacks of redness, pain and irritation secondary to infection, irritants and dust. He cannot blink away irritants as most people do, and has been fitted with a soft bandage lens (a contact lens that covers the entire eye) that makes him more prone to infection, but alleviates the chronic discomfort in his eye. This lens comes out occasionally (as often as 15-20 times per year) and must be replaced by an opthalmologist. The vision in Lashen's right eye is unimpaired. However, he suffers from a "strong sympathizing effect" in that eye, i.e. an irritant in his left eye causes redness and watering in his right eye as well.
 
 
 5
 A physician evaluating Lashen in 1987 on behalf of the Ohio Industrial Commission stated that if Lashen's symptoms of tearing and discomfort could not be controlled, "he must be considered to be permanently and totally disabled." (App. 191.) The record does not reflect that Lashen's symptoms of pain and tearing were ever brought under control.
 
 
 6
 In 1988, Lashen's ophthalmologist John Costin was asked to state Lashen's work-related abilities. Dr. Costin responded that Lashen was "unable to do activities that require the use of binocular vision." Dr. Costin later stated that "the biggest problem ... is the environment. I think an environment with a lot of dust, irritants, allergens, or even smoke could lead to an increase of susceptibility to all of the problems discussed above for Mr. Lashen." Dr. Costin did not impose any weight lifting restrictions, but stated that bending or other positions could cause Lashen to lose the soft bandage lens.
 
 Orthopedic Problems
 
 7
 Lashen is right handed. In 1984, he was diagnosed with lateral epicondylitis of the right elbow (tennis elbow), severe right carpal tunnel syndrome and mild left carpal tunnel syndrome. He had a carpal tunnel release performed on his right hand and a steroid injection in his joint. Only one physician evaluated Lashen's orthopedic problems, Allan Goodwin. Consistent with Lashen's reported difficulty with holding things in his right hand, Dr. Goodwin stated that Lashen suffered from numbness in the fingers of his right hand and diminished right-hand grip strength. X-rays taken in 1986 revealed mild disc space narrowing at L4-5 and minimal anterior hypertrophic spurring at L2. X-rays taken in 1988 demonstrated a Grade I spondylolisthesis of L4 on 5, and an x-ray of his ankle revealed a rounded bony fragment, possibly due to a remote avulsion fracture.
 
 
 8
 Dr. Goodwin stated that Lashen could lift up to five pounds frequently and up to 20 pounds occasionally; and could carry up to five pounds frequently and up to ten pounds occasionally. Dr. Goodwin limited Lashen to sitting, standing and walking to one hour at a time each, and to a total of one hour of sitting in an eight-hour day, three hours of standing, and four hours of walking. According to Dr. Goodwin, Lashen was unable to use his right hand for fine manipulation, and could not use either foot for pushing and pulling of leg controls. Dr. Goodwin limited Lashen to occasional bending, and stated that he was unable to squat, crawl or climb. Dr. Goodwin concluded that Lashen was unable to carry out sustained remunerative employment in light of his eye impairments and orthopedic limitations.
 
 Vocational Testing
 
 9
 Lashen completed ten and one-half years of school. However, vocational evaluation conducted at Cleveland Metropolitan General Hospital indicated that Lashen has only seventh grade reading skills and sixth grade arithmetic skills. Lashen's aptitude tests were poor, indicating that his writing skills are limited to very basic tasks and that his basic skills are marginal. Both gross and fine manual dexterity were found to be well below average at the first and fifth percentiles, respectively. Testing determined that Lashen's measuring skills are poor and that he has a limited ability to handle money. In general, his work was found to be accurate, but he worked at only 30 to 35 percent of competitive work speed. "His slow work speed was caused at least in part by his visual problem, but his thinking and problem solving ability appear limited. By the end of the day [he] appeared tired and he had more difficulty concentrating on tasks. Based on his performance during evaluation his work tolerance is limited to 3 to 4 hours per day of sedentary or light work tasks." (App. 229.) Finally, Lashen was found to have no transferrable skills which could be used for employment, limited potential to benefit from vocational retraining and severely limited ability to compete for employment.
 
 B.
 
 10
 Lashen filed an application for disability benefits in 1988 and a hearing was held before an administrative law judge (ALJ). Considering Lashen's residual functional capacity, age, education, and past relevant work experience, and using the medical vocational guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, Rule 203.03, as a framework for evaluating Lashen's impairments, the ALJ concluded that Lashen was not disabled. The Appeals Council subsequently reversed and remanded the case to the ALJ for a new hearing, directing the ALJ to obtain testimony from a vocational expert on the extent to which Lashen's non-exertional impairments diminished his occupational base and, if appropriate, to identify examples of jobs that Lashen could perform in the national economy.
 
 Lashen's Testimony
 
 11
 At the first hearing, Lashen testified that his left eye "pains" all the time and it always feels like there is something in his eye. He stated that smoke, dust, fumes and wind cause his left eye to tear, and then his right eye as well. He cannot tolerate cold with his left eye.
 
 
 12
 Lashen testified that he experienced pain in his back, legs and ankle. He stated that Anaprox was prescribed for his arthritis but he took Tylenol instead because Anaprox upset his system. Lashen testified that numbness in the fingers of his right hand causes him to drop things. He stated that he thought he might be able to carry up to 20 pounds with his left arm at his side, but could not lift or carry that weight out in front of him.
 
 
 13
 Lashen testified that he watches television, does a little cooking, and makes the bed, and can run a small hand vacuum in the kitchen, wash the clothes and dishes, and mow the lawn with the riding mower. He stated that he enjoyed fishing but stopped going in 1988. Lashen has a driver's license, but stated that he drives regularly only to a grocery store one-quarter mile away from his home. He testified that he does not drive at night or in the rain, and some days does not go out at all. He visits relatives with his wife and goes shopping with her as well.
 
 Medical Expert
 
 14
 A medical expert, Dr. Steinberg, testified at the hearing after reviewing the records and briefly questioning Lashen. Dr. Steinberg stated that Lashen could work only in a clean atmosphere, meaning a clean factory or an office, and that he must avoid dangerous machinery due to his lack of depth perception. He also testified that Lashen was capable of medium work, defined in the regulations as work involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). Dr. Steinberg's opinion was not altered by Dr. Goodwin's assessment that Lashen had numbness in two fingers of his right hand and diminished grip strength in that hand. "That would still allow for medium level activities, however, particularly with the strong left hand." Of significance to Dr. Steinberg was the fact that Lashen had not sought further treatment for his carpal tunnel syndrome and took only over-the-counter pain medication.
 
 Vocational Expert
 
 15
 A vocational expert, Ted Macy, testified that Lashen's job at U.S. Steel was just within the semi-skilled category, and that there were very few skills that would transfer to other jobs. The ALJ asked him to identify the jobs which a person could perform given these limitations: medium work, highly clean atmosphere, normal changes in temperature, and avoidance of dangerous machinery or environments that could injure someone with a depth perception problem. Macy identified eight positions: security guard, gate tender, hand packager, packing line worker, general laborer, wire worker, electronics worker, and check cashier.
 
 
 16
 On cross-examination, Macy acknowledged that Lashen's inability to work at greater than 30-35 percent competitive work speed would affect his assessment. "[I]f a 30 percent production standard was ... applied, if that figure that he gives in there is ... valid for gross dexterity as well as fine dexterity, it would eliminate most of the jobs I've given you." Macy did not clarify which, if any, of the eight jobs would not be eliminated. (App. 117-18). Independent of the work speed limitation, Macy acknowledged that the numbers of jobs he had said were available for the general laborer and hand packer positions included jobs "which would certainly be in dusty environments, in dirty environments." Moreover, in many cases, the jobs of security guard and gate tender would require outside duty, involving exposure to vehicular fumes and dust for a major part of the day. Despite the fact that the ALJ's hypothetical limited the work environment to a "highly clean atmosphere," Macy included these positions, although he conceded that 40-50 percent of these jobs too would have to be eliminated. Macy further stated that Lashen would not have a problem in performing the record-keeping functions of security guards and gate keepers, despite his poor aptitude tests and the Cleveland hospital's evaluation that Lashen's thinking and problem solving skills were limited. "I don't know how many problems are solved by a security guard that would fall into the same definition of problem solving...." (App. 129.)
 
 ALJ Decision
 
 17
 Proceeding through the five-step sequential analysis, 20 C.F.R. § 404.1520, the ALJ concluded that: Lashen was not working; had a severe impairment; and that the impairment did not meet or equal the listed impairments of 20 C.F.R. Part 404, Subpart P, App. 1.
 
 
 18
 The ALJ next determined Lashen's residual functional capacity, finding the record clear that Lashen could perform medium work. The ALJ relied in part on the fact that Lashen had participated in a variety of activities during the period in question, including mowing the lawn and vacuuming, but did not acknowledge that Lashen used a riding mower and operated only a small hand vacuum. The ALJ did not discuss Dr. Goodwin's weight limitations, and discounted Lashen's problems with numbness in his right hand, noting that Lashen had not sought follow-up therapy following the 1984 surgery for carpal tunnel syndrome. He also noted that Lashen's left arm was unimpaired. The ALJ found that Lashen's complaint of disabling pain was not supported by evidence, noting that Lashen had not sought follow-up care and took only over-the-counter pain medication.
 
 
 19
 Concluding that Lashen had the capacity for medium work, the ALJ stated that "[b]ased upon the totality of the evidence, the claimant retains significant musculoskeletal and vision functions. In fact, the claimant's treating ophthalmologist has stated that the claimant can still perform work-related activities that would not require binocular vision." (App. 21.) The ALJ did not address the relevance of the ophthalmologist's opinion regarding Lashen's eye injury limitations to Lashen's ability to lift and carry the weights within the medium classification of work.
 
 
 20
 The ALJ noted that Lashen had undergone vocational evaluation, but dismissed the report, stating only that "it must be noted that the claimant was able to participate in a series of vocational tests during the course of the full day." The ALJ did not credit the results of those tests, the fact that the evaluator specifically noted Lashen's fatigue and difficulty concentrating at the end of the sessions, or the limitations revealed by the evaluation, e.g., slow work speed, below average dexterity, marginal skills and poor aptitude.
 
 
 21
 The ALJ found that Lashen is not capable of performing his past work, and correctly acknowledged that the Secretary bore the burden of proving that there are other jobs existing in the national economy in significant numbers which Lashen can perform. The ALJ found that although Lashen's nonexertional limitations did not allow him to perform the full range of medium work, there were a significant number of jobs in the national economy which Lashen could perform, citing the examples given by the vocational expert at the hearing. Significantly, the ALJ listed all the jobs which Macy identified and the total number of the jobs which he identified. The ALJ did not address the effects of Lashen's work speed limitation or take into account Macy's acknowledgement that he had overstated the total number of positions because he had included some for which the environment would be unacceptable due to Lashen's eye condition.
 
 
 22
 The Appeals Council denied review, and the district court affirmed, finding substantial evidence to support the Secretary's determinations.
 
 II.
 
 23
 This court will affirm the decision of an ALJ denying benefits if the findings are supported by substantial evidence, defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Walker v. Secretary of Health and Human Serv., 980 F.2d 1066, 1070 (6th Cir.1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In making this determination, the court must examine the administrative record as a whole. Walker, 980 F.2d at 1070.
 
 
 24
 The goal of the five-step sequential evaluation mandated by the regulations is the rational and fair determination of whether the claimant meets the underlying statutory test for disability, i.e., whether considering the claimant's age, education and work experience, the claimant's impairments have rendered him unable to engage in substantial gainful activity existing in the national economy. Skinner v. Secretary of Health and Human Serv., 902 F.2d 447, 450 (6th Cir.1990); 20 C.F.R. § 404.1520(f).
 
 
 25
 The ALJ is to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled. 20 C.F.R. § 404.1523; Walker, 980 F.2d at 1071; Mowery v. Heckler, 771 F.2d 966, 971 (6th Cir.1985) ("Disability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result."); Hurst v. Schweiker, 725 F.2d 53, 55 (6th Cir.1984) (reversing for an award of benefits where a combination of impairments rendered the claimant disabled).
 
 
 26
 In assessing the medical evidence, it is generally the case that greater deference is given to the opinion of a treating physician over that of a one-time consultant. "The medical opinion of the treating physician is to be given substantial deference--and, if that opinion is not contradicted, complete deference must be given." Walker, 980 F.2d at 1070. However, the opinion of a physician properly may be limited to the specific problem for which that physician treated the claimant. For example, if a treating neurosurgeon does not evaluate the claimant's mental condition or how the mental condition in combination with a back injury would affect the claimant's ability to earn a living, the neurosurgeon's report that the claimant's back pain is lessening is not contradictory to a finding of disability. Id. at 1070-71.
 
 
 27
 The opinion of a consulting doctor cannot be disregarded merely because the doctor has seen the claimant only once, and the claimant's attorney made the referral. Blankenship v. Bowen, 874 F.2d 1116, 1121, 1122 n. 8 (6th Cir.1989).
 
 
 28
 Second, the ALJ erroneously disregarded Dr. George's findings. These findings were discounted because Dr. George examined appellant on only one occasion and there was not present a clear diagnostic picture. ... However, upon review of the record, the court finds no medical evidence contradicting Dr. George's conclusion. No other examination was conducted at that time, and the examination was supported by specific and complete medical findings....
 
 
 29
 Id. at 1121 (emphasis added).
 
 
 30
 The Secretary may sustain the burden of proving that the claimant can perform work which exists in significant numbers in the national economy through the testimony of a vocational expert. However, the vocational expert's testimony must be based on a hypothetical question which accurately portrays the claimant's impairments. If the vocational expert's testimony does not take into account the medical status of the claimant, or if the expert is unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his opinion. Sias v. Secretary of Health and Human Serv., 861 F.2d 475, 481 (6th Cir.1988).
 
 
 31
 A thorough review of the record in this case leads to the conclusion that substantial evidence supports neither the ALJ's finding regarding Lashen's residual functional capacity nor his finding that there are significant jobs in the national economy which Lashen can perform. To make these findings, the ALJ: evaluated Lashen's visual and orthopedic impairments in a piecemeal fashion; relied on Dr. Costin's assessments of the work limitations resulting from Lashen's eye injury as evidence of Lashen's lack of orthopedic exertional limitations; ignored or discredited uncontradicted evidence, specifically, the reports of the Cleveland hospital's vocational evaluator and Dr. Goodwin; ignored the opinion of the medical expert called by the ALJ himself that Lashen was limited to working in clean atmospheres, meaning a clean factory or office; and relied on the vocational expert's identification of jobs that Lashen was allegedly capable of performing despite the expert's candid admission that Lashen's slow work speed would eliminate most of the jobs, and that up to half of the jobs identified should be eliminated due to inappropriate work environments.
 
 
 32
 Reviewing the record as a whole, and giving proper recognition to the all of the medical and vocational evidence, the following picture of Lashen emerges: blind the left eye, with frequent eye irritation, burning, redness, and infections in that eye and sympathetic effect in the right eye; unable to bend, because he might lose his soft lens bandage; unable to tolerate smoke, fumes, dust, wind or allergens; unable to squat, crawl or climb, or to use his feet for pushing or pulling controls; unable to lift with his right hand or arm, although he is right handed, and limited to lifting at his side with his left arm; limited to lifting 20 pounds and carrying ten pounds on an occasional basis;[1] unable to work at greater than 30-35 percent competitive work speed due to a number of factors, including his vision and poor fine and gross manual dexterity; sixth grade math ability and seventh grade reading ability.
 
 
 33
 The vocational expert's testimony concerning the jobs that Lashen is allegedly capable of performing was based on determinations regarding Lashen's capabilities and limitations which are not supported by substantial evidence. Moreover, it is not possible on the record of this case to isolate certain jobs identified by Macy which Lashen can perform despite his limitations. Macy himself acknowledged that "most" of the jobs he identified would have to be eliminated if Lashen's gross manual dexterity limitations were taken into account, but did not identify which jobs would not be eliminated by these limitations. Moreover, Macy admitted that up to half of the hand packer, general laborer, security guard and gate keeper positions involved environments which were inappropriate even under the hypothetical posed by the ALJ. Finally, based on Macy's testimony, the security guard and gate keeper positions, even if existing in work environments compatible with Lashen's eye impairments, involve duties which might require problem solving skills beyond Lashen's ability. In sum, the vocational expert's testimony does not provide substantial evidence that work exists in the national economy which Lashen is capable of performing. The ALJ erred in relying on this testimony.
 
 
 34
 When there is an adequate record and the proof of disability is strong and evidence to the contrary is lacking, this court can reverse for an award of benefits. Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir.1985). We do so in this case. The proof of Lashen's disability is strong, and the record does not contain substantial evidence to support the ALJ's conclusion to the contrary. As noted, the goal of the five-step sequential evaluation is the rational and fair determination of whether a claimant meets the statutory test for disability. That goal was not achieved in this case.
 
 
 35
 REVERSED and REMANDED to the district court with directions to REMAND to the Secretary for an award of benefits.
 
 
 36
 RYAN, Circuit Judge, dissenting.
 
 
 37
 In my judgment, there is substantial evidence in the record to support the findings of the Administrative Law Judge that Mr. Lashen is not disabled within the meaning of provision of the Social Security Act governing disability insurance benefit payments, see 42 U.S.C. § 423. See also 20 C.F.R. § 404.1520. That evidence is detailed in the ALJ's extensive written findings of April 25, 1990.
 
 
 38
 It may be that my colleagues' interpretation of the evidence, and particularly the weight they have assigned to portions of it, provides a substantial basis for determining that Mr. Lashen is not disabled. But our appellate task is to determine whether the evidentiary record as interpreted by the ALJ, including his, not our, credibility determinations amounts to substantial evidence supporting the ALJ's conclusions that Mr. Lashen is not entitled to benefits. In my view it does and, therefore, I must respectfully dissent.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 There is not substantial evidence that Lashen is capable of lifting and carrying the weights within the medium classification of work set forth in 20 C.F.R. § 404.1567(c). The only evidence in support of this proposition is the testimony of Dr. Steinberg, who neither examined nor treated Lashen. See Walker, 980 F.2d at 1071-72. The opinion of Dr. Goodwin, who tested and evaluated Lashen's combined exertional and nonexertional limitations, was significantly more conservative than that of Dr. Steinberg, and was based on objective evidence of medical conditions, consistent with Lashen's reports of pain and lack of manual dexterity