Christopher SHAFT, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 99–10035.

United States District Court, E.D. Michigan, Northern Division.

Dec. 20, 1999.

---

Lewis M. Seward, Seward, Tally, Bay City, MI, for plaintiff.

William L. Woodward, U.S. Attorney's Office, Detroit, MI, for defendant.

## ORDER OF REMAND

ROBERTS, District Judge.

### I.

This matter is before the Court on both parties' Motions for Summary Judgment. The Motions were referred to Magistrate Judge Charles E. Binder, who issued a Report and Recommendation ("R & R") on September 2, 1999. In his R & R, the Magistrate recommended that the Court grant Defendant's Motion and deny Plaintiff's Motion. Plaintiff filed objections, and the Court has made a *de novo* review of the specific arguments raised. For the reasons explained below, the Court finds that the decision of the Commissioner is not supported by the evidence and declines to adopt the recommendations of the Magistrate Judge. Further, the Court also concludes that Plaintiff is entitled to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). Accordingly, the Court **DENIES** Defendant's Motion, **DENIES IN PART, GRANTS IN PART** Plaintiff's Motion, and **REMANDS** this case for further review.

### II.

Christopher A. Shaft ("Plaintiff"), a minor child, filed the instant claim for Supplemental Security Income ("SSI") benefits on September 30, 1994. Plaintiff's claim was denied originally and upon reconsideration. On July 28, 1997, Plaintiff appeared with his mother Theresa and counsel before Administrative Law Judge ("ALJ") John A. LaFalce, who considered his case *de novo*. On August 28, 1997, the ALJ found that Plaintiff suffered from a severe impairment of attention deficit disorder. However, he concluded that Plaintiff's limitations did not meet and were not equivalent to the listed impairments. Accordingly, the ALJ concluded that Plaintiff

was not "disabled" within the meaning of the Social Security Act.

The ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits, the Appeals Council denied review. Plaintiff then filed the present suit on February 4, 1999, seeking judicial review of the Commissioner's decision.

### III.

### A.

 The decision of the Commissioner is reviewable by the district court for a determination of whether it exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Bowen v. Yuckert,* 482 U.S. 137, 145, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The district court may reject the final decision of the Commissioner where the decision is not supported by substantial evidence. 42 U.S.C. § 405(g); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir.1993); *Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir.1992). Substantial evidence is "that which is greater than a scintilla but less than a preponderance." *Walker,* 980 F.2d at 1070. It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that decision could support a decision the other way. *Casey,* 987 F.2d at 1233. In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan,* 998 F.2d 342, 347 (6th Cir.1993). In conducting its review, the district court must examine the administrative record as a whole, *Walker,* 980 F.2d at 1070, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir.1989).

 If a court determines that substantial medical evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). A judicial award of benefits is proper only where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking, such that remand would be merely cumulative. *Id.*

### B.

In the present case, Plaintiff claims that the Commissioner's decision is not supported by substantial evidence. Plaintiff claims that the evidence in the record as a whole demonstrates that he meets the functional equivalence of a listing because he has marked limitations in two areas: social functioning and development, and concentration, persistence and pace. Additionally, he claims that post-hearing evidence demonstrates a reasonable probability that a different outcome would result and that there was good cause for not submitting it.

Pursuant to 20 C.F.R. § 416.926a the Commissioner may find a disability where the functional limitations caused by an impairment are equivalent to those of a listed impairment. Under 20 C.F.R. § 416.926a(b)(2), the Commissioner considers a claimant's limitations in several broad areas of development, including social functioning and development, motor functioning, personal functioning, cognition/communication and concentration, persistence or pace. 20 C.F.R. § 416.926a(b)(2). If a claimant has an extreme limitation in one area of functioning or marked limitations in two areas of functioning, the Commissioner will find the impairment to be functionally equivalent to a listed impairment. *Id.* A marked limitation for someone of Plaintiff's age is one

that is "more than moderate" and "less than extreme." 20 C.F.R. § 416.926a(c)(3)(i)(C). It may be found when only one activity is limited "as long as the degree of limitation is such as to interfere seriously with the child's functioning." *Id.* An extreme limitation for one of Plaintiff's age means that there is "no meaningful functioning in a given area." *Id.* at (c)(3)(ii)(C).

■ Upon *de novo* review of the evidence in the record as a whole, the Court agrees that the Commissioner's decision is not supported by substantial evidence. Specifically, a reasonable mind could not accept that Plaintiff has less than marked limitations in his social development and functioning. Social development and functioning is defined as the

> ability or inability to form and maintain relationships with other individuals and with groups; e.g., parents, siblings, neighborhood children, classmates, teachers. Ability is manifested in responding to and initiating social interaction with others, sustaining relationships, and participating in group activities. It involves cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity appropriate to a child's age. Ability is also manifested in the absence of inappropriate externalized actions (e.g., running away, physical aggression—but not self-injurious actions, which are evaluated in the personal area of functioning), and the absence of inappropriate internalized actions (e.g., social isolation, avoidance of interpersonal activities, mutism). Social functioning in play, school, and work situations may involve interactions with adults, including responding appropriately to persons in authority (e.g., teachers, coaches, employers) or cooperative behaviors involving other children.

20 C.F.R. § 416.926a(c)(4)(iii). For a person of Plaintiff's age, social development is further described as the "ability or inability to play alone, with another child, and in a group; to initiate and develop friendships; to respond to [ ]social environments through appropriate and increasingly complex interpersonal behaviors ... and to relate appropriately to individuals and in group situations...." 20 C.F.R. § 416.926a(c)(5)(iv)(C). The ALJ found that Plaintiff had a history of behavioral problems, but that the use of Ritalin in recent years had improved his behavior. (Tr. 21–22). While there is clearly some evidence of improvement with medication, the vast majority of improvement related only to Plaintiff's academic performance. The evidence in the record as a whole does not, however, support a finding of less than marked limitation in social functioning and/or development. Indeed, the evidence may support a finding that Plaintiff has "no meaningful functioning" in social situations and therefore, his limitation is extreme.

Plaintiff's second grade teacher reported in November, 1994 that while Plaintiff could attend to his lessons while on medication, he hadn't "learned the social skills needed to make and keep friends." (Tr. 245). She reported that he would hit a child and then cry that the other child had started it. (*Id.*). Additionally, Plaintiff's treating physician stated that his condition was "partially controlled with medication," but that Plaintiff had "very poor self control" and was "impulsive" and "mildly angry." (Tr. 232–34). Further, while Plaintiff's mother reported to the consultative examiner that Plaintiff had a good relationship with his teacher, his teacher's notes from that same time period show that Plaintiff continued to experience significant difficulties in social functioning. (Tr. 219, 242). For example, the teacher sent notes home indicating that Plaintiff got into a spitting match with another student (Tr. 242), that he swore at people when he was punished (Tr. 243), that he kicked off his shoes in gym (*Id.*), that he lay down on the cafeteria floor during lunch (Tr. 241), and that he continued to

have trouble making friends (Tr. 248). In April 1995, Plaintiff's teacher reported that he still had trouble making and keeping friends, and that he hadn't learned how to play with others without getting into a fight. (Tr. 233). She reported: "His inability to keep friends concerns me.... The problem comes up about once a week." (*Id.*).

Additionally, a May, 1996 report by Dr. Weil notes that Plaintiff "has problems in establishing and maintaining peer relationships and he appears quite impulsive." (Tr. 264) While the doctor indicated that the problems lessened with medication, he noted that they are "present at home most of the time." (Tr. 264). Among the doctor's impression were "a number of socially inappropriate behaviors, such as kissing and hugging girls in public who are strangers or school peers, pulling his pants down in the classroom, pulling the pants down of others, and sexual play with his younger brother." (Tr. 265). When Plaintiff was next seen by Dr. Weil four months later, his situation at school had improved, but his situation at home had not, as he still got angry "all the time." (Tr. 261). Later that year, Plaintiff's treating therapist reported that Plaintiff scored in the highest range of dysfunction on a Child and Adolescent Functional Assessment Scale ("CAFAS"), with "severe" problems fulfilling roles relevant to his place in society and severe difficulties with behavior towards others. (Tr. 300–01).

Finally, while Plaintiff was placed in foster care and improved in some respects, he continued to have serious social conflicts. (Tr. 291). His foster mother reported that Plaintiff did not have any friends, that he had a lot of behavior problems at school and in group situations, that he did not participate in clubs well because of problems with his behavior, and that "on a daily basis" many of his actions were sexually oriented. (Tr. 302–04). Plaintiff's special education teacher at the time also noted that Plaintiff got along with teachers and classmates, but that he tried to kiss other kids, that he had been suspended, and that he received a lot of detention. (Tr. 306–07). His year end school report also indicated that Plaintiff had a "long way to go in social behaviors." (Tr. 309). Finally, a follow-up CAFAS report found that Plaintiff might be harmful to himself or others due to aggression at school and sexual behaviors. (Tr. 287).

In short, while the Court agrees that the evidence supports the conclusion that some of Plaintiff's problems improved with the help of medications and foster home placement, his social development and functioning was not significantly impacted. The record is replete with references to Plaintiff's inability to develop or maintain relationships, particularly with his peers. Additionally, the evidence consistently suggests an inability to participate in group activities and a lack of consideration for others, and a pattern of physical aggression. As such, the evidence does not support the conclusion that Plaintiff had less than marked limitations in social functioning or development. Rather, the Court finds that the evidence supports a finding of at least marked, and possibly extreme, limitation.

Moreover, given this conclusion, the Court also finds that Plaintiff has met his burden of demonstrating that remand is appropriate. *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Plaintiff has come forward with new evidence concerning Plaintiff's condition prior to August 28, 1997 (the date of decision), which bears directly on the potentially extreme nature of his limitation in social functioning. *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir.1986); *Fazio v. Heckler*, 750 F.2d 541, 543 (6th Cir.1984). In particular, the Court notes evidence from October, 1996 indicating that Plaintiff urinated on the playground and skipped detention, and evidence that Plaintiff told girls that he would strip them naked. (Tr. 347, 359). This and the other time-relevant evidence, when considered in conjunc-

tion with the other evidence in the record, strongly suggests that Plaintiff's limitations may be extreme. As such, Plaintiff has demonstrated a reasonable probability that a different disposition would result from consideration of this evidence.[1] Finally, the Court finds that Plaintiff has demonstrated good cause for failing to obtain this evidence prior to the hearing. Counsel diligently sought these records several weeks prior to the hearing, but did not receive them until several months later.

## IV.

Based on its *de novo* review of the issues raised, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Specifically, the Court finds that the evidence is insufficient to reasonably support the conclusion that Plaintiff suffers a less than marked limitation in the area of social functioning and development. Of course, the Court recognizes that a finding of marked limitation in this area would not necessarily alter the outcome.[2] However, the Court is of the view that remand is nonetheless proper because the evidence in the record as a whole suggests that the limitation may even be extreme. Further, the Court finds that if the Commissioner had found a marked limitation, it is sufficiently likely that consideration of the additional time-relevant evidence would have resulted in a finding of extreme limitation. Accordingly, the Court declines to adopt the recommendations of the Magistrate Judge. Defendant's Motion for Summary Judgment is **DENIED**, Plaintiff's Motion for Summary Judgment is **DENIED IN PART**, **GRANTED IN PART**, and the case is remanded for additional consideration.

**IT IS SO ORDERED.**

---

1. Defendant argues that since the ALJ found no marked limitation, consideration of this evidence would not change the outcome since Plaintiff did not suffer a marked limitation in any other area. However, since the Court concludes that Plaintiff suffers at least a marked limitation, it appears sufficiently likely that consideration of this evidence could support a finding of extreme limitation. Thus, it is reasonably probable that consideration of the evidence would change the outcome of the case.

2. The Court agrees with Defendant that the findings regarding Plaintiff's limitations in concentration, persistence and pace are sufficiently supported.