**Phyllis J. SMITH, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant– Appellee.**

No. 02–1653.

United States Court of Appeals, Sixth Circuit.

Aug. 27, 2003.

Eva I. Guerra, Law Offices of Eva I. Guerra, White Lake, MI, for Plaintiff–Appellant.

Mary S. Rigdon, Asst. U.S. Attorney, U.S. Attorney's Office, Detroit, MI, Anne Lipnitz, Assistant Regional Counsel, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff–Appellant, Phyllis J. Smith ("Smith"), appeals the final decision of the Commissioner of Social Security ("Commissioner") that she is not "disabled" for purposes of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, or Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381(a).

For the reasons set forth below, we conclude that this decision is supported by substantial evidence and decided under the proper legal standards, and AFFIRM the denial of Smith's DIB and SSI benefits.

## I. BACKGROUND AND FACTUAL SUMMARY

*Background*

In this appeal, Smith seeks judicial review of the final decision of the Commissioner that she is not "disabled" for purposes of DIB under Title II of the Social Security Act, and SSI under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381(a). Smith filed applications for a period of disability, DIB, and SSI on April 15, 1997, alleging disability beginning on January 1, 1993, due to pain in her back, leg, and ankle. On March 31, 1998, Smith's eligibility for SSI and DIB ended. At that time, Smith was forty-one years of age, which is defined by Social Security Regulations as a "younger individual."

The Commissioner denied her claims initially and on reconsideration. On January 12, 1999, Administrative Law Judge Robert D. Stalker ("ALJ") held a hearing at which Smith and a vocational expert testified. On June 21, 1999, the ALJ issued a hearing decision, denying Smith's claim. The Appeals Council denied Smith's request for review, making the ALJ's deci-

sion the Commissioner's final disposition regarding her status. Smith subsequently appealed to the United States District Court, whereupon United States District Judge Julian Abele Cook, Jr. declined to accept the Report and Recommendation of Magistrate Judge Wallace Capel, Jr. (who recommended remanding the case to the Commissioner for further proceedings), and granted summary judgment in favor of the Commissioner. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Smith initiated this action for judicial review of the denial of her disability benefits.

*Factual Summary*

Smith was admitted to the emergency department at St. Joseph Mercy Hospital on February 19, 1997. At that time, Smith complained of atypical chest pain. An EKG was performed, the results of which were normal. Soon after, Smith was diagnosed with trochanteric bursitis, but it was noted by the attending physician that psychiatric indicators had suggested that Smith suffered from a pain disorder associated with a medical condition, plus negative psychological factors. From March to May of 1997, Smith received physical therapy for treatment of her pain on the advice of her treating physician, Dr. Edward Washabaugh, of the Michigan Pain Institute. In June of 1997, Smith was examined by Dr. Pieter Vreede, a rheumatologist, who concluded that the cause of her left leg and hip pain was unclear. Dr. Vreede then referred Smith to a neurologist–Dr. Anastasios Alexiou. Dr. Alexiou concluded from his examination of Smith that her complaints of pain were subjective, and "impossible to document."

In October of 1997, Dr. John Trotter performed a consultative medical examination of Smith for the purpose of her application for disability benefits. He noted in his remarks that his examination of Smith was limited due to her complaints of pain,

and he diagnosed her with arthritis. Also in October of 1997, an MRI was performed on Smith's lumbar spine which revealed that she had mild disc bulges and moderate facet degenerative changes. On October 29, 1997, Dr. Washabaugh studied Smith's MRI results, and diagnosed her with chronic pain syndrome, facet arthropathy, and degenerative disc disease. On December 2, 1997, Dr. Donald Ross, another neurologist, examined Smith and concluded that she had no clinically significant disc bulge or neural compression. Dr. Ross could diagnose no source of her complained weakness, and was "not sure what to make of [her complaints]."

In May of 1998, after participating in several months of physical therapy, Smith was prescribed an antidepressant by Dr. Washabaugh in order to assist her with her "chronic pain." At this time, Dr. Washabaugh suggested that Smith increase the level of her physical activity. In his May 15, 1998 letter to Dr. Vreede, Dr. Washabaugh wrote that "[t]he best thing [for Smith] would be work or even volunteer work . . . we discussed many opportunities for that today." In August of 1998, a psychologist, Dr. Ross Halpern, evaluated Smith at the request of Dr. Washabaugh. Dr. Halpern did not diagnose Smith with any psychological impairment, but he suggested that she should develop a skill or hobby in order to remain productive, rather than "sitting around the house constantly focusing on her pain." In October of 1998, Dr. Alexiou again examined Smith, and described her examination as "hysterical." He also noted the lack of effort by Smith upon muscular testing. In November of 1998, Smith reported to the emergency room complaining of back and groin pain. She was given pain medication, and released.

On January 8, 1999, Smith was examined by Dr. Steven Harwood, a specialist

in physical medicine and rehabilitation, at the request of Dr. Washabaugh. Dr. Harwood noted that Smith had several inconsistencies in her physical exam. He diagnosed chronic pain syndrome and stated that "there was a functional component to her pain." That same month, Dr. Harwood proceeded to fill out several forms on behalf of Smith, on which he suggested that she would be unable to work an eight-hour work day and that she would need to rest during the day for up to four hours.

On March 8, 1999, Dr. Elizabeth Bishop, a psychologist with the Michigan Disability Determination Service, performed a psychological evaluation of Smith. Dr. Bishop diagnosed Smith with "[p]ain disorder associated with both psychological factors, arthritis, and back pain." While noting that Smith might benefit from mental health treatment and follow-up with a pain clinic, Dr. Bishop concluded that Smith suffered from no significant limitation in her ability to do work-related activities.

On March 15, 1999, Dr. April Campbell performed a consultative medical examination on Smith. Dr. Campbell found that Smith's complaints of weakness were not consistent with any physiological state, and emphasized that she did not provide any effort with regard to lower extremity muscle testing. Dr. Campbell concluded that no objective evidence existed of any ongoing neurological, muscular, or osteo pathology; and that Smith had no limitations in lifting, standing, walking or sitting.

On January 12, 1999, during a hearing before the ALJ, Ms. Nancy Jo Quinlan, a qualified vocational expert, testified as to the nature of Smith's prior employment, and her ability to secure appropriate work given her current physical and mental condition. Ms. Quinlan concluded that a "hypothetical worker" of Smith's age, education, prior work experience (along with the residual functional capacity to perform a restricted range of sedentary and unskilled work), could perform any of a number of jobs which exist in the national and regional economy. These jobs included: inspector (1,700), assembler (12,000), information clerk (1,700), cashier (16,000), and reception clerk (6,200). The figures in parentheses represent the number of positions that exist in the regional economy and reflects four percent of the national average.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment in a case involving denial of social security disability benefits *de novo*. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1069 (6th Cir. 1992). Further, judicial review of the Commissioner's decision to deny benefits revolves around whether the findings, and ultimate decision of the Commissioner, are supported by substantial evidence. " 'Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (citations omitted). Under *Kirk*, the ALJ's findings should be affirmed by our Court if supported by substantial evidence. *See id.*

## III. ANALYSIS

To establish disability under the Social Security Act, Smith must prove the "inability to engage in any substantial gainful activity by reason of a medically determinable physical condition or mental impairment which can be expected to result in death or [last] for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see Walker*, 980 F.2d at 1070.

A five-step evaluation format has been promulgated by the Commissioner for use

in determining whether disability benefits should be allowed to a claimant. The step-by-step, sequential formula which the Commissioner is required to utilize in evaluating an individual's eligibility for disability benefits proceeds as follows:

(1) Is the claimant working? If not,

(2) Does the claimant have a severe impairment? If so,

(3) Is/are the claimant's impairment(s) listed in, or equivalent to, an impairment listed in appendix one to 20 C.F.R. part 404, subpart P? If not,

(4) Does the impairment prevent the claimant from doing past relevant work? If so,

(5) Does the claimant's impairment prevent him from doing any other work?

See 20 C.F.R. §§ 404.1520, 416.920; see also Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680 (6th Cir.1992). Accordingly, the ALJ in this case found that Smith: (1) had not engaged in substantial gainful activity since January 1, 1993, (2) that the degenerative changes and bulging discs in Smith's back and her chronic pain syndrome were "severe" impairments within the meaning of the regulations, (3) but that these were not of sufficient severity to meet or equal the criteria of any listed impairment, (4) she could not perform her past relevant work, but however (5) she was capable of performing other work that exists in significant numbers in the national economy, and was, therefore, not disabled.

We review a decision to deny disability benefits in order to determine if it was supported by substantial evidence; if indeed it was, the Commissioner's findings should be affirmed. We agree with the district court's conclusion that substantial evidence supports the ALJ's finding that Smith could perform the limited demands of a restricted range of sedentary work. The ALJ considered both the objective medical evidence contained in the record, as well as Smith's subjective complaints of pain in assessing her physical limitations. See 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1) (describing objective evidence as medical signs and laboratory findings); 20 C.F.R. §§ 404.1529, 416.929 ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by the objective medical evidence alone, the Social Security Administration will carefully consider any other information [provided] about [subjective] symptoms.").

In making the determination that Smith could perform a limited range of sedentary work, the ALJ reasonably relied upon the opinions of Smith's treating physician, two examining psychologists, and a state agency psychologist. As of 1997, more than four years after Smith's alleged onset of disability, no medical evidence existed which documented any discernable mental or physical impairment. Smith has submitted no evidence suggesting that she had a severe mental impairment prior to 1997, and based on the medical evidence available as of December 24, 1997, Dr. Armand Kapik, a psychiatrist who examined Smith, concluded that she did not have a medically determinable mental impairment.

Additionally, the ALJ reasonably relied on opinions of two examining psychologists in determining that Smith could perform a limited range of sedentary work. In 1998, Dr. Halpern conducted a psychological examination of Smith, and did not diagnose her with any psychological impairment. Rather, Dr. Halpern recommended that Smith be referred for vocational rehabilitation and that she should develop a skill or hobby to remain productive, rather than "sitting around the house constantly focusing on her pain." A second examining psychologist, Dr. Bishop, of the Michigan Disability Determination Service, found that Smith had no evidence of any signifi-

cant limitation in her ability to do work-related activities despite her diagnosis of chronic pain disorder. Smith asserts that the ALJ should have given greater weight to her one-time assigned Global Assessment of Functioning (GAF) score of forty-eight as evidence of her inability to perform even limited work. However, the ALJ noted that Dr. Bishop, the very psychologist who assigned this score, indicated that Smith "was not markedly limited in any area of functioning."

Accordingly, we agree with both the district court and the Commissioner, and conclude that there is substantial evidence in the administrative record to support the finding that Smith was not disabled.

## IV. CONCLUSION

For the foregoing reasons, the denial of Smith's disability benefits is AFFIRMED.