25 F.3d 1048
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John GIESEKING, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-3608.
 United States Court of Appeals, Sixth Circuit.
 May 25, 1994.
 
 Before: MERRITT, Chief Judge; MILBURN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant John Gieseking appeals the decision of the Secretary of Health and Human Services denying his claim for Supplemental Security Income ("SSI") filed pursuant to 42 U.S.C. Secs. 1381 and 1382. On appeal, the issues are (1) whether the Secretary's finding that claimant suffered from "frequent" deficiencies of pace resulting in failure to complete tasks in a timely manner was a degree of impairment which under the Secretary's regulations at 20 C.F.R. Secs. 404.1520a and 416.920a was incompatible with work-related functioning, and (2) whether the Secretary failed to satisfy her burden of establishing that there was a significant number of jobs in the economy which plaintiff could perform. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant filed an application for SSI benefits on June 1, 1989, alleging that he had been disabled since August 2, 1976.[1] The claim was denied initially and on reconsideration.
 
 
 3
 On June 12, 1990, a hearing was held before an ALJ. Plaintiff, his sister, Sally Parker, and a vocational expert, Charlotta Ewers, testified at the hearing. Thereafter, on August 2, 1990, the ALJ issued a decision finding that claimant was not entitled to SSI benefits. Claimant appealed the ALJ's decision to the Appeals Council which vacated the ALJ's decision on April 3, 1991.
 
 
 4
 A second hearing was held before a different ALJ on June 6, 1991. Claimant and his sister also testified at the second hearing. Subsequently, on September 10, 1991, the second ALJ issued a decision and order finding that claimant was not entitled to SSI benefits because he was not disabled. The ALJ's decision became the final decision of the Secretary on February 21, 1992, when the Appeals Council denied review.
 
 
 5
 On March 25, 1992, claimant sought judicial review of the Secretary's final decision in the district court under 42 U.S.C. Sec. 405(g), and the matter was referred to a magistrate judge. On October 15, 1992, the magistrate judge issued a report and recommendation in which he recommended that the Secretary's decision be affirmed. On March 3, 1993, after de novo review, the district court adopted the report and recommendation and affirmed the Secretary's final decision. This timely appeal followed.
 
 B.
 
 6
 Claimant was born on May 11, 1952, and was 39 years of age at the time of the Secretary's final decision. Claimant completed high school in a special education program. He worked as a custodian at a local school from 1972 to 1985, when he stopped working due to a back injury. From September 1987 until May 1989, claimant worked at a sheltered workshop sponsored by Eastco Enterprises. Claimant stopped working there when he began receiving Worker's Compensation for temporary disability.[2]
 
 
 7
 Dr. Payne, a psychologist, reported the results of his examination of claimant on June 13, 1986. Dr. Payne stated that the results of claimant's intellectual evaluation placed him in the borderline range of intellectual functioning. Dr. Payne further stated that claimant's reading and math skills were at about the level of the beginning of the fifth grade; his spelling skills were at the beginning of the third grade level; his achievement skills were quite limited; his mechanical reasoning skills were fairly low; his clerical skills were low; and his fine motor skills were slightly better. Dr. Payne also stated that claimant was suspicious and had auditory hallucinations; i.e., hearing telephone calls without a telephone. Dr. Payne's diagnoses were borderline intellectual functioning and paranoid type schizophrenic disorder.
 
 
 8
 On August 15, 1986, claimant was examined by Dr. Lee, a psychiatrist. Dr. Lee reported that his diagnostic impression was chronic paranoid schizophrenia along with the presence of an adjustment disorder with mild depression and anxiety. Dr. Lee opined that claimant should be treated with chemotherapy as well as psychotherapy.
 
 
 9
 On September 9, 1986, Karen Stailey, a reviewing psychologist, reported that claimant has always been dependent on others and was hindered by his borderline IQ. She stated that claimant's schizophrenia leads to a need for supervision. Dr. Stailey characterized claimant's activities of daily living as markedly to extremely limited and his social functioning as markedly limited. She stated that he often has deficiencies of concentration and that he had one or two episodes of deterioration or decompensation at work or in a work-like setting.
 
 
 10
 Claimant was examined by Dr. Young, a psychologist, at the Miami Valley Pain Center on October 22, 1986. Dr. Young reported that a full behavioral pain analysis was not accomplished due to claimant's psychiatric and mental status issues. Dr. Young stated that the complaints and psychological features presented were consistent with the previous diagnosis of paranoid schizophrenia.
 
 
 11
 From June through July of 1987, claimant was evaluated by Goodwill Vocational Rehabilitation Services. Their report indicated that claimant could work a 5.25-hour day without undue fatigue, could stand for no more than two hours daily, experienced discomfort after 15 minutes of standing, and could sustain a brief five-second vertical lift of ten pounds. The report also stated that plaintiff appears to be limited to sedentary work and had academic limitations in spelling, language, and math.
 
 
 12
 The record also contains reports from various physicians at the East Dayton (Ohio) Health Center. On August 7, 1986, the health center reported that an examination by an orthopedist in March 1985 showed no neurologic abnormalities, muscle weakness, spasticity, rigidity, or tremor.
 
 
 13
 On July 22, 1989, the health center reported that an EMG of claimant's lower extremities on December 22, 1986, showed no abnormalities. An EMG of claimant's right arm on March 25, 1985, showed acute and/or mild right carpal tunnel syndrome. Claimant underwent a surgical carpal tunnel release in May 1988. A MRI of claimant's spine in June 1988 showed abnormal signal intensity throughout the body of the T4 vertebrae and around the body of the T10 vertebrae, which were interpreted as being consistent with vertebral body meningiomas. The reports from the health care providers also stated that claimant has a chronic long-standing complaint of back pain which cannot be substantiated on physical examination or testing and that claimant's chronic paranoid schizophrenia would probably be his biggest deterrent to working at the present.
 
 
 14
 On January 3, 1990, the health center providers diagnosed paranoid schizophrenia, chronic back pain, hypertension, probable hemangiomas at T10, and status post carpal tunnel syndrome right and left wrists. The physicians opined that claimant was capable of working but should avoid frequent repetitive flexion of the wrists due to his history of carpal tunnel syndrome; should avoid bending, twisting, or stooping secondary to his back pain; and should avoid lifting more than ten pounds.
 
 
 15
 A psychologist, Dr. Pawlarczyk, reported on August 28, 1989, that claimant had borderline intelligence; moderate restrictions in activities of daily living and in maintaining social functioning; often had deficiencies of concentration, persistence, or pace; and never had episodes of decompensation. Dr Pawlarczyk also stated that claimant's understanding and memory were not significantly to markedly limited; his sustained concentration and persistence were not significantly to moderately to markedly limited; claimant's social interaction was not significantly to moderately to markedly limited; and his adaptation was not significantly to moderately limited.
 
 
 16
 Dr. Waddell, a reviewing psychologist, reported on November 22, 1989, that claimant had paranoid schizophrenia in remission; borderline IQ; a moderate degree of limitation in activities of daily living and in maintaining social functioning; often had deficiencies of concentration, persistence, or pace; and never had episodes of deterioration or decompensation. Dr. Waddell stated that claimant's understanding and memory were not significantly to markedly limited; claimant's sustained concentration and persistence ranged from not significantly to moderately to markedly limited; claimant's social interaction was not significantly to moderately limited; and claimant's adaptation was not significantly to moderately limited. Dr. Waddell also stated that claimant would be able to complete simple, routine, low stress tasks in a well-structured setting although he was quite immature in social functioning and activities of daily living.
 
 
 17
 On June 12, 1989, the mental health providers at Eastway Life Management Services reported that claimant was usually very neat and maintains personal hygiene and grooming habits, had appropriate but rambling speech, and had paranoid ideations and grandiose thoughts. The diagnosis was paranoid type schizophrenia in remission and borderline intellectual functioning. The report also stated that claimant visits family and friends three to four days per week; attends church; cooks for himself; washes dishes; cleans house; minimally repairs small objects; drives a car and rides public transportation frequently; cannot lift any object over ten pounds; sleeps only a few hours a night; and cannot do a great deal of lifting, stand for a long period of time, walk for long distances or sit for long periods of time.
 
 
 18
 On July 17, 1989, the mental health care providers reported a diagnosis of paranoid type schizophrenia in remission and borderline intellectual functioning. The mental health care providers reported on December 6, 1989, that no significant change had been noted in claimant's condition and that he had grandiose thoughts which far exceed his physical abilities and intellectual skills.
 
 
 19
 On February 19, 1990, the mental health care providers reported that claimant has moderate restrictions of activities of daily living and maintaining social functioning; seldom has deficiencies in concentration, persistence, or pace; has marked difficulties in maintaining occupational functioning; has moderate restrictions with respect to memory, insight, judgment; still has some paranoid delusions that hinder judgment processes and impair his insight into mental illness; has moderate to marked restrictions with respect to ability to adjust to a job; and may exhibit some inappropriate behaviors in a social setting.
 
 
 20
 On May 11, 1990, it was reported that claimant was referred to Eastco, a vocational rehabilitation service run by Eastway, on September 14, 1987. Claimant was with the program until May 5, 1989. Claimant worked on the production floor for two and one-half days per week as work became available; his productivity averaged 52.6 percent of standards; his performance was considered fair; and his quality of work was considered good.
 
 
 21
 Subsequently, on June 4, 1990, it was reported that while at Eastco, claimant's productivity was equal to approximately 50 percent of the standards of competitive norms for an entry level position in private industry. While at Eastco, claimant worked at various tasks such as labeling, mail sorting, envelope sealing, and inserting mailers.
 
 
 22
 At the first administrative hearing, claimant testified that he does read and write but not well, that he does his own housework and grocery shopping, that he is able to lift a ten-pound bag of sugar and 20 pounds of flour with some difficulty, and that he does cooking and laundry. Claimant also testified that he can walk for about four blocks before he gets pain in his hips, that he can sit for about two hours, and can stand for about 15 minutes. Claimant also visits with some friends and relatives once a day and some every other week; he goes to church almost every Sunday and baby-sits for his six-year old niece about once a week. Claimant also testified that he has pain about 90 percent of the time and takes an hourly nap approximately five days per week.
 
 
 23
 Claimant's sister, Sally Parker, testified at the first hearing that she sees claimant about two or three times per week; she helps him with his finances, helps him to buy his clothes, and reminds him to bathe and clean himself. She also testified that claimant only baby-sits her daughter about once a month for a very short period of time because he is almost as immature as she is.
 
 
 24
 At the first hearing, the vocational expert ("VE") testified that Eastco's report that claimant's productivity was estimated at approximately 50 percent of an entry level position was based upon piece work, and, based upon that report, claimant could not perform assembly line piece work type jobs. The vocational expert testified that claimant's past work as a janitor was very heavy exertionally and unskilled, and claimant did not have any acquired skills. The VE also testified that claimant was unable to perform his past relevant work as a janitor. Based upon a hypothetical from the ALJ, the VE identified approximately 22,000 light jobs which claimant could perform. She testified that none of these jobs required deep concentration but that deficiencies of concentration would reduce the productivity of an individual in one of those jobs. The VE also testified that of the sedentary, unskilled jobs she had identified, about 10,000 involved piece work. Finally, on cross-examination, the VE admitted that if an individual in a sheltered situation were able to achieve only 50 percent of entry level production standards, that individual was slow and would not be able to compete in a competitive economy on a quality type of production basis.
 
 
 25
 As earlier stated, plaintiff and his sister testified at the second hearing. Plaintiff's testimony was similar to his testimony at the first hearing except he testified that he did not drive unless it was an emergency, and he relied on his sister for help, especially with shopping. Claimant also testified that he would like to be involved in some work activity if it did not cause a conflict with his receipt of checks for worker's compensation.
 
 
 26
 Claimant's sister testified that she started helping him in 1986 or 1987 because he was evicted from his apartment, had no place to live, and was in debt. She testified that before she began helping claimant, his wife helped him, at least until they were divorced, and that before that his mother helped him. She testified that claimant has no sense of finance and that but for her and her husband he would be out on the streets. She also testified that her brother had poor hygiene habits and that she had to help him maintain a halfway decent diet. Ms. Parker testified that her brother hears voices all the time, does not handle stress well, is very slow in thought and in performance, does not deal well with people either socially or at work, and that her brother tries to lead other people to believe that he is more than what he actually is.
 
 II.
 
 27
 Pursuant to 42 U.S.C. Sec. 405(g), this court has jurisdiction to review the Secretary's decisions. Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 28
 In determining whether the Secretary's factual findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. Born v. Secretary of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir.1990). If supported by substantial evidence, the Secretary's decision must be affirmed even if this court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).
 
 
 29
 A social security disability claimant bears the ultimate burden of proof on the issue of disability. Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984). However, once a claimant makes out a prima facie case that he cannot perform his usual work due to his disability, the burden of proof then shifts to the Secretary to show that there is work in the national economy which the claimant can perform. Martonik v. Heckler, 773 F.2d 236, 239 (8th Cir.1985); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). The Secretary must prove that having considered the claimant's present job qualifications, such as age experience, education, and physical capacity, as well as the existence of jobs to match those qualifications, the claimant retains the residual functional capacity to perform a different kind of job. Young v. Secretary of Health & Human Servs., 925 F.2d 146, 148 (6th Cir.1990); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir.1990).
 
 
 30
 A vocational expert is generally consulted where a claimant has significant nonexertional limitations. Buck v. Bowen, 885 F.2d 451, 455 (8th Cir.1989); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir.1988). The testimony of a vocational expert must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir.1987).
 
 
 31
 Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. Sec. 1382(a). The statutory standards for disability determinations under SSI are identical to those for Social Security Disability Insurance determinations. 42 U.S.C. Sec. 1382c(a)(3)(A).
 
 
 32
 In this case, the ALJ found that claimant had not engaged in substantial gainful activity since June 1, 1989, and that claimant had a combination of mental and physical impairments which were severe, but did not meet or equal any listed impairments. The ALJ further found that claimant's subjective complaints were not credible and that he had the residual functional capacity to perform sedentary work except for (1) lifting more than five pounds; (2) remaining in one position for prolonged periods; (3) bending or twisting frequently; (4) performing anything other than simple, unskilled tasks; and (5) performing tasks which require fine concentration or a good ability to concentrate.
 
 
 33
 The ALJ determined that claimant was unable to perform his past relevant work as a custodian but that as a younger individual with a high school education and no transferrable work skills, there were a significant number of jobs in the national economy which the claimant could perform. This determination was based upon the VE's testimony.
 
 A.
 
 34
 Claimant argues that the ALJ should have found that he was presumptively disabled under the Social Security regulations because he met one of the four "B criteria" to 20 C.F.R. Part 404, Subpart. P, Appendix 1, Listing 12.03B. This argument is meritless.
 
 
 35
 The four "B criteria" are "activities of daily living;" "social functioning;" "concentration, persistence, and pace;" and "deterioration or decompensation in work or work-like settings." 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 12.00C. The regulations state that for the area of "concentration, persistence and pace," a rating of "frequent" or "constant" represents a degree of limitation which is incompatible with the ability to perform that particular work function. 20 C.F.R. Secs. 404.1520a(b)(3), 416.920a(b)(3). In this case, the ALJ found that claimant had frequent deficiencies of concentration, persistence, and pace. Thus, plaintiff met one of the four "B criteria." Claimant acknowledges, however, that he lacks the requisite degree of severity in the other three areas of functioning; viz., the other three "B criteria." Appellant's Brief at 6. Pursuant to the regulations, to satisfy the listing and be found disabled based upon the listings, a claimant must establish the requisite level of severity for two of the four "B criteria." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.03B. Since claimant admits that he does not satisfy at least two of the four "B criteria," he is not presumptively disabled.
 
 
 36
 Further, contrary to claimant's assertions, the ALJ's hypothetical to the VE as well as his findings based upon the VE's answers are consistent with the regulations at 20 C.F.R. Secs. 404.1520a(b)(3) and 416.920a(b)(3). Having determined that claimant had frequent deficiencies of concentration, persistence, and pace, the ALJ incorporated such a limitation into his hypothetical to the VE, a limitation which was consistent with the language in the regulations that claimant's degree of limitation in the area of "concentration, persistence, and pace" was incompatible with the ability to perform that work function.[3]
 
 B.
 
 37
 Claimant also argues that the VE's testimony is not substantial evidence that he was capable of performing work in the national economy. Specifically, claimant contends that because the ALJ asked the VE to assume that claimant experienced deficiencies of concentration, persistence, and pace "often," as opposed to "frequently," the VE's testimony did not support the ALJ's finding that claimant could work competitively in the national economy. Moreover, under cross-examination, the VE acknowledged that claimant's work at Eastco's sheltered workshop, where he achieved only 50 percent of the productivity required for an entry level position in the competitive economy, showed that claimant's work pace was slow. Claimant therefore asserts that the VE's testimony does not support the ALJ's finding that claimant could work competitively in the national economy.
 
 
 38
 First, claimant's contention that the ALJ's hypothetical to the VE was defective because the ALJ asked the VE to assume that claimant "often" had deficiencies of "concentration, persistence, and pace," rather than "frequently" had such deficiencies is meritless. In this case, regardless of whether the ALJ characterized claimant's deficiencies of concentration, persistence, and pace as occurring "often" or "frequently," the VE was aware of claimant's actual rate of production at the Eastco sheltered workshop, and the VE was also aware of the limitations to claimant's ability to concentrate and his pace. Further, although the second ALJ indicated on the Psychiatric Review Technique Form that claimant had frequent deficiencies of concentration and persistence or pace, the narrative portion of the ALJ's decision shows that this finding was somewhat equivocal on the part of the ALJ. The ALJ stated that while he "would concede that claimant suffers frequent pace deficits, I do not believe that his ability to concentrate, persist with tasks or interact with others in a competitive work environment is significantly limited." R. 20. Accordingly, the ALJ's use of the word "often" rather than "frequently" in his hypothetical to the VE does not discredit the ALJ's finding that plaintiff can perform work in the national economy.
 
 
 39
 Further, contrary to claimant's assertion, the VE's testimony on cross-examination by claimant's counsel does not show that claimant could not perform a significant number of jobs in the national economy. On cross-examination by claimant's counsel, the VE testified that if an individual in a sheltered workshop was able to achieve only 50 percent of entry level production standards, that individual was slow and would not be able to compete in a competitive economy on a quality type of production basis. However, the VE had previously testified that the report from Eastco concerning claimant's productivity was based on and applied only to the performance of piece work jobs. Taking this evidence into consideration, the VE testified that claimant would not be capable of performing piece work, assembly line jobs; however, the VE identified 12,000 other jobs, not involving piece work, which the claimant could perform. On cross-examination, the VE testified that plaintiff would not be capable of performing work in the competitive economy only after assuming, as did claimant's counsel, that the 50 percent productivity applied to all jobs in the competitive economy. However, because the VE had already testified that the Eastco report applied only to piece work type jobs, the ALJ was justified in rejecting claimant's interpretation of the VE's testimony. Therefore, substantial evidence supports the ALJ's finding that claimant could perform a significant number of jobs in the economy and thus was not disabled.
 
 III.
 
 40
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Claimant filed a previous application for SSI benefits on July 9, 1986. In September 1986, the Social Security Administration initially determined that claimant had a mental impairment which satisfied Listing 12.03 and awarded benefits to him. Claimant never received any benefits, however, because he was receiving Worker's Compensation benefits. The issues set out above are the only findings of the ALJ which the claimant challenges in this appeal
 
 
 [2]
 The issues raised by claimant on appeal concern the assessment of his nonexertional mental impairment. Therefore, in our review of the medical evidence, we have omitted discussion of physicians' reports concerning claimant's physical impairments because they are not relevant to the issues on appeal. The reports omitted herein are discussed in detail in the magistrate judge's report and recommendation
 
 
 [3]
 In his brief on appeal, claimant engages in a lengthy diatribe against the Secretary for her historical mistreatment of Social Security claimants with mental impairments. Claimant also engages in a lengthy exegesis of the definition of the word "incompatible." Although somewhat interesting, these discussions are irrelevant to our decision