**Lester BANKSTON, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 99–CV–75543–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 25, 2000.

Kenneth F. Laritz, Clinton Township, MI, for plaintiff.

Peter A. Caplan, U.S. Attorney's Office, Detroit, MI, for defendant.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court to determine whether there is substantial evidence in the record to support the finding of the Commissioner of Social Security and the Magistrate Judge's Report and Recommendation denying Plaintiff's application for disability benefits under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423. Both parties filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. The Report and Recommendation of the Magistrate Judge affirmed the decision of the Administrative Law Judge (hereinafter "ALJ") denying Plaintiff's Motion for Summary Judgment and granting Defendant's motion. Plaintiff has filed objections to the Magistrate Judge's Report and Recommendation. The Court heard oral argument on the issues presented on August 30, 2000. For the reasons set forth below, the final decision of the Commissioner and the Magistrate Judge's Report and Recommendation is REVERSED. Plaintiff's Motion for Summary Judgment is GRANTED. Defendant's Motion for Summary Judgment is DENIED. Further, the Court REMANDS this case to the Commissioner with instructions to award Plaintiff disability benefits to which he is entitled under the Social Security Act.

### II. BACKGROUND

#### A. Factual History

Plaintiff is forty-seven years old and has an eighth grade education. He worked for Ford Motor Company as a tow truck driver from 1968 through 1990 and an auto assembler from 1990 through 1994 (26½ years). Plaintiff applied for disability benefits on March 24, 1995 because of three ruptured disks, headaches, numbness, and tingling in his hands and fingers, as well as pain in his shoulders, arms, and lower back, the injuries allegedly occurring on July 6, 1994.

Plaintiff was hospitalized December 15, 1993 for psychotherapy and was diagnosed with depression and alcohol abuse. Plaintiff was again hospitalized on March 22, 1994 and was discharged on April 4, 1994 with a Global Assessment of Functioning (GAF) rating of 35–40, which is a poor to guarded prognosis due to Plaintiff's "poor motivation" and "very poor compliance" with treatment and continued alcohol abuse.[1]

On May 30, 1995, Plaintiff's treating physician, Dr. Judy Macy, diagnosed him with cervical (neck) and lumbosacral (lower vertebrae) radiculopathy (disease of nerve roots) with pain in the neck and lower back. On June 10, 1997, Plaintiff's physician reported to Plaintiff's attorney that the side effects of the medication Plaintiff was taking (Ultram, Darvocet, and Skelaxin) included sedation. The doctor also stated that Plaintiff had difficulty standing due to a heel spur in his right foot and that the pain in his lower back caused him to feel as though his lower extremities were going to give out on him. The doctor further stated that Plaintiff had constant headaches from cervical radiculopathy and had to lie down during the day to relieve his back pain. Plaintiff testified that he is in pain on a daily basis and that his medications cause him to feel drowsy. Dr. Macy opined that Plaintiff's prognosis for "employability" was poor, and noted that Plaintiff was "medically retired" from Ford Motor Company.

#### B. Procedural History and Dispute

At the administrative hearing of the Social Security Commission, the ALJ posed two hypothetical questions to the testifying

---

1. The Court is mindful of 42 U.S.C. § 423(d)(2)(C), which precludes finding a disability where drugs or alcohol are a material factor in determining that a disability exists. However, it was confirmed in the briefs and at oral argument that Plaintiff's use of alcohol is not a contributing factor in this case.

vocational expert (hereinafter "VE"), Dr. Charles Oliver. The first question assumed a person of Plaintiff's age and experience, with the same injuries and on the same medication as Plaintiff. However, the question assumed the person felt "drowsy" due to medication, but the drowsiness was not an "ongoing functional limitation." The VE concluded that this hypothetical worker could effectively perform 6,000 jobs in the national economy entailing "sedentary" work,[2] and therefore would preclude disability benefits under the Statute.

The second hypothetical posed by the ALJ assumed the person's medication caused drowsiness that required morning and afternoon naps at unpredictable times. The VE concluded that this hypothetical worker could perform no work, and thus, be eligible for benefits.

On Plaintiff's cross-examination of the VE, Plaintiff's counsel asked the VE the impact on Plaintiff's ability to perform the sedentary jobs if he "*often* had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner." Plaintiff's counsel formed his question by referring to a Psychiatric Review Technique Form (hereinafter "PRTF") using the word to describe Plaintiff's deficiencies. Asked by the ALJ how to interpret the word "often," Plaintiff's counsel responded that in this case the word "often" would be interpreted as an inability to concentrate one-third of the time. The VE responded that a person could perform no work if he could not concentrate one-third of the time.

The ALJ found, and the Magistrate affirmed, that Plaintiff's allegations regarding his limitations were not as severe as alleged and while Plaintiff may be drowsy at times, he could still perform the sedentary jobs listed by the VE, thus the ALJ and Magistrate rejected Plaintiff's definition of "often" and denied benefits to Plaintiff under the Statute.

The Magistrate conceded that the Social Security regulations, rulings, and case opinions provide no clear definition of the word "often." Plaintiff asks this Court to provide a definition.

## III. STANDARD OF REVIEW

A district court's standard of review for a magistrate judge's report and recommendation is *de novo* when objections are made to the report and recommendation. *See* FED. R. CIV. P. 72(b). This Court may "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.* Because Plaintiff filed timely objections, this Court must review the Magistrate Judge's Report and Recommendation *de novo*.

However, pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner of Social Security's decision is limited to whether there is substantial evidence in the record to support the ALJ's factual findings. *See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). "Substantial evidence means more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981). This court must review the administrative record as a whole and take into account "whatever in the record fairly detracts from its weight." *Garland v. Shalala*, No. 94–6647, 1996 WL 99809, *5, 1996 U.S.App. LEXIS 6107, at*14 (6th Cir. Mar. 5, 1996).

## IV. ANALYSIS

Plaintiff may only receive disability insurance benefits if he can establish a "disability" within the terms of the Social

---

**2.** Sedentary work entails occasionally lifting or carrying small articles such as docket files or small tools. A certain amount of standing and walking is necessary in carrying out these job duties. *See* 20 C.F.R. § 404.1567(a).

Security Act. *See* 42 U.S.C. § 423(d)(1)(A). Specifically, Plaintiff has the burden to show he is unable to engage in any substantial gainful activity by reason of any "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." *Id.* The ALJ must follow a five-step sequential process to determine whether Plaintiff has carried his burden of establishing a disability. *See* 20 C.F.R. § 404.1520. In the first four parts of the test, Plaintiff must show that (1) he is not presently employed, (2) his impairment is "severe," (3) the impairment meets or is medically equal to a "listed impairment" as defined by the Social Security Administration, (4) he does not have the residual functional capacity to perform his former work. *See* 20 C.F.R. § 404.1520(a)-(e). After Plaintiff has satisfied the first four steps, the burden shifts to the Commissioner to show whether Plaintiff has the residual functional capacity to perform any other substantial gainful activity or sedentary work. *See* 20 C.F.R. § 404.1520(f).

The crux of the dispute in this case lies in the ALJ's determination at step five that Plaintiff has the residual functional capacity to perform sedentary work.

## A. Plaintiff's Case

The Court finds it reversible error for the ALJ to have failed to give due deference to the medical opinion of Plaintiff's treating physician, the opinion of the testifying VE at the administrative hearing, and Plaintiff's own allegations of pain.

### 1. The Treating Physician Doctrine

In *Walker v. Secretary of Health and Human Servs.*, 980 F.2d 1066 (6th Cir. 1992), the claimant had listed on his PRTF that he often suffered from deficiencies of concentration, persistence, and pace. The claimant's treating physician stated that he was disabled due to his injuries and pain and was not employable. *See id.* at 1068.

The VE responded that the claimant was not employable after hearing a description of a hypothetical person with the claimant's physical traits and injuries. *See id.* at 1069. The ALJ ignored the opinion of the VE and claimant's treating physician and found that the claimant was capable of sedentary work, thus, was not disabled. *See id.* The Sixth Circuit overturned the Commissioner and found the claimant disabled. *See id.* at 1072.

■ The court held that pursuant to the "treating physician doctrine," the medical opinion "of the treating physician is to be given substantial deference—and, if that opinion is not contradicted, complete deference must be given." *Id.* at 1070. The Sixth Circuit has recently explained the rationale for the doctrine as follows:

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

*Wesley v. Commissioner of Social Security*, No. 99–1226, 2000 WL 191664, *5, 2000 U.S.App. LEXIS 2265, at *15–16 (6th Cir. Feb. 11, 1996) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994)).

In *Garland v. Shalala*, No. 94–6647, 1996 WL 99809, at 5, 1996 U.S.App. LEXIS 6107, at *14 (6th Cir. Mar. 5, 1996), the ALJ ignored the opinion of the VE that the claimant was not employable and held that, in his opinion, the claimant could perform light work, thus, was not disabled. *See id.*, 1996 WL 99809, at 10, 1996 U.S. App. LEXIS 6107, at *28–29. The Sixth Circuit found this to be reversible error and directed the district court, which affirmed the ALJ, to remand the case to the Commissioner with instructions to award benefits to the claimant. *See id,* 1996 WL 99809, at 11, 1996 U.S. App. LEXIS 6107, at *30. In *Wesley,* the Sixth Circuit held

that the treating physician doctrine did not apply to claimant's health professionals who had examined her only once. *See Wesley,* No. 99–1226, 2000 WL 191664, at 5, 2000 U.S. App.LEXIS 2265, at *16.

■ Plaintiff's treating physician, Dr. Macy, has treated Plaintiff approximately once every three months since 1994. As in *Walker,* Plaintiff's treating physician stated that due to his injuries, Plaintiff was "medically retired" from Ford Motor Company and that prospects of his future employability were poor. Indeed, Dr. Macy stated that Plaintiff is "totally and permanently disabled." Like the VE in *Walker* and *Garland,* the VE at Plaintiff's hearing testified that a hypothetical person with Plaintiff's injuries and diagnosed drowsiness resulting from his medication was not employable. As the ALJ ruled in both *Walker* and *Garland,* the ALJ at Plaintiff's hearing ignored the opinion of Plaintiff's treating physician and the VE and made a unilateral decision that Plaintiff was capable of performing sedentary work, thus, was not disabled.

Pursuant to *Walker* and *Garland,* the Court finds the "treating physician doctrine" applicable to the facts of this case. Since the opinion of Plaintiff's treating physician has not been contradicted,[3] that opinion must be given complete deference by this Court. *See Walker,* 980 F.2d at 1070. Therefore, this Court affirms the opinion of Plaintiff's treating physician and the VE that Plaintiff's injuries, pain, and side effects from his medication preclude employment, thus making Plaintiff disabled under the Social Security Act. The Court also finds that since Plaintiff's treating physician has regularly treated him since 1994, the Sixth Circuit's opinion in *Wesley* does not preclude application of the treating physician doctrine in this case.

## 2. Plaintiff's Allegations of Pain

■ The Court finds that is was improper for the ALJ to have unilaterally discounted the level of pain alleged by Plaintiff.

■ In *Garland,* the ALJ was convinced "that the objective medical evidence did not support [claimant's] 'subjective' allegations of pain." *See Garland,* No. 94–6647, 1996 WL 99809, at *9, 1996 U.S. App.LEXIS 6107, at *26. The Sixth Circuit reversed the ALJ and found that it is well settled that subjective complaints of pain alone, if the result of a medical impairment, may support a claim of disability. *See Wesley,* No. 99–1226, 2000 WL 191664, at *6, 2000 U.S. App.LEXIS 2265, at *17 (citing *King v. Heckler,* 742 F.2d 968, 974 (6th Cir.1984)); *Garland,* No. 94–6647, *id.,* 1996 WL 99809, at *9–10, 1996 U.S. App. LEXIS 6107, at *26–27 (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1123 (6th Cir.1989)).

As in *Garland,* Plaintiff stated he suffered from constant headaches and was in pain most of the time. These allegations of pain were supported by the testimony of Plaintiff's treating physician. The Court finds as the Sixth Circuit did in *Garland:* that it was reversible error for the ALJ in this case to have unilaterally determined that the medical evidence did not support Plaintiff's subjective allegations of pain.

## B. Definition of "Often"

At the administrative hearing, Plaintiff's counsel asked the VE the impact on Plaintiff's ability to perform sedentary jobs if he "often" had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. Plaintiff's counsel formed his question by referring to the PRTF using the word to de-

---

**3.** On December 19, 1993, N. Saran, M.D. diagnosed Plaintiff with depression and alcohol abuse. On May 5, 1995, Gerald Brishkin, Ph.D. performed a psychological evaluation of Plaintiff and determined that he had a dysthymic disorder was unable to work. On May 19, 1995, Dr. Bradley Haas, M.D. diagnosed Plaintiff with "severe arthritis" and did not rule out other impairments noted by Plaintiff's treating physician. Consequently, the medical conclusions of Plaintiff's treating physician have not been contradicted.

scribe Plaintiff's deficiencies. The scale on the PRTF measuring the consistency of Plaintiff's deficiencies of concentration, persistence, or pace is as follows: NEVER, SELDOM, OFTEN, FREQUENT, and CONSTANT. Asked by the ALJ how to interpret the word "often," Plaintiff's counsel responded that in this case the word "often" would be interpreted as an inability to concentrate one-third of the time. The VE responded that a person could perform no work if he could not concentrate one-third of the time.

The ALJ found, and the Magistrate affirmed, that Plaintiff's allegations regarding his limitations were not as severe as alleged and while Plaintiff may be drowsy at times, he could still perform the sedentary jobs listed by the VE, thus the ALJ and Magistrate Judge rejected Plaintiff's definition of "often" and denied benefits to Plaintiff under the Statute.

The Magistrate conceded that the Social Security regulations, rulings, and case opinions provide no clear definition of the word "often." Plaintiff asks this Court to provide a definition.

### 1. The Regulations

In the Magistrate's Report and Recommendation, he stated that "it is clear that the Commissioner's regulations accept such deficiencies that occur 'often' as being consistent with substantial gainful employment." However, the one regulation that mentions the word "often" on a deficiency scale indicates that a person "often" experiencing mental deficiencies has a severe impairment that may significantly limit that person's ability to do basic work activities.

20 C.F.R. § 404.1520a(b)(3) uses the same 5-category scale (never, seldom, often, frequent, and constant) as the PRTF to quantify a person's mental deficiencies of concentration, persistence, or pace.

The regulation states that a rating of "never" or "seldom" indicates that the impairment is not severe, unless other evidence is presented to establish an inability to perform basic work activities. See 20 C.F.R. § 404.1520a(c)(1). Implicit in this reasoning is that a rating of "often," which is greater than "never" or "seldom," indicates a severe impairment which indicates a limitation on ability to do basic work activities.

A reasonable interpretation of 20 C.F.R. § 404.1520a indicates that a mental deficiency occurring "often" may not be consistent with substantial gainful employment.[4] This line of reasoning may be imputed to Plaintiff's PRTF, which uses the exact same scale to measure Plaintiff's concentration, persistence, or pace.

### 2. Relevant Case Law

In *Gieseking v. Secretary of Health and Human Servs.*, No. 93–3608, 1994 WL 228239, 1994 U.S.App. LEXIS 13396 (6th Cir. May 25, 1994), the Sixth Circuit was ambivalent about the distinction between characterizing a person's deficiencies of concentration, persistence, or pace as occurring "often" or "frequent[ly]." See *id.* at *6. The court was of the opinion that any rating on a PRTF was secondary to a VE's opinion on the claimant's pace and ability to concentrate. The court opined that "regardless of whether the ALJ characterized claimant's deficiencies of concentration, persistence, and pace as occurring 'often' or 'frequently,' the VE was aware of claimant's actual rate of production ... and the VE was also aware of the limitations to claimant's ability to concentrate and his pace." *Id.*

In *Thomczek v. Commissioner of Social Security*, No. 94–74011, 1996 WL 426247, 1996 U.S. Dist. LEXIS 947 (E.D.Mich. Jan.5, 1996), the district court in the East-

---

4. It should be noted that the scale used to assess deficiencies of concentration, persistence, or pace in 20 C.F.R. § 1520a and Plaintiff's PRTF is only one step in assessing a

person's residual functional capacity to perform other substantial gainful activity. See S.S.R. 96–8p, 1996 S.S.R. LEXIS 5, at *13 (July 2, 1996).

ern District of Michigan remanded a case to the Commissioner because the VE "did not discuss the impact of [the claimant] often having concentration deficiencies" as stated on his PRTF. *See id.* at *2. The court opined that in order for the Commissioner's finding that plaintiff was not disabled to be valid, "there must be a ... supported finding that [the claimant] does not *often* suffer from concentration lapses...." *Id.* (emphasis added). Simple inverse reasoning of this opinion dictates that a claimant who "often" suffers from deficiencies in concentration, persistence, or pace would be considered disabled under the Social Security Act.

In *Walker v. Secretary of Health and Human Servs.*, 980 F.2d 1066 (6th Cir. 1992), the claimant had listed on his PRTF that he often suffered from deficiencies of concentration, persistence, and pace. The claimants treating physician stated that he was disabled due to his injuries and pain and was not employable. *See id.* at 1068. The VE responded that the claimant was not employable after hearing a description of a hypothetical person with the claimant's physical traits and injuries. *See id.* at 1069. The ALJ ignored the VE and the claimant's treating physician and found the claimant not disabled. *See id.* The Sixth Circuit overturned the Commissioner and found the claimant disabled. *See id.* at 1072. Again, a finding that a person often suffers from deficiencies in concentration, persistence, or pace resulted in finding that person disabled under the Statute.

### 3. Reasonable Interpretation

■ A final analysis by this Court reveals that the most reasonable interpretation of the word "often" as used in the PRTF is set forth in Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, an interpretation expounded upon at oral argument.

The Magistrate Judge was obviously correct in concluding that use of the term "frequent" in the PRTF indicates a higher incident of deficiencies of concentration,

persistence, or pace than "often." The levels of concentration impairment on the PRTF and in 20 C.F.R. § 1520a(b)(3) are clearly divided into five separate categories: Never, Seldom, Often, Frequent, and Constant. "Never" is obviously 0% of the time and "Constant," for purposes of this definition, is 100% of the time. Logic supports the conclusion that the other categories be divided equally by corresponding time factors which then give a range of concentration impairment. Thus, "Never" = 0, "Seldom" = 25%, "Often" = 50%, "Frequent" = 75%, "Constant" = 100%.

At the administrative hearing, Plaintiff's definition of "often" as being one-third of the time was on the low side of the concentration definition table listed above. This Court's newly-adopted definition of "often" affirms Plaintiff's claims that his deficiencies of concentration, persistence, or pace precluded him from performing even sedentary work, thus making him disabled under the Social Security Act.

The Court finds that substantial evidence does not support the Commissioner's decision. Further, the Court finds that all factual issues have been resolved and the record adequately establishes Plaintiff's entitlement to benefits.

### V. CONCLUSION

Accordingly, for the reasons stated above, the final decision of the Commissioner of Social Security and the Magistrate Judge's Report and Recommendation is REVERSED. Plaintiff's Motion for Summary Judgment is GRANTED. Defendant's Motion for Summary Judgment is DENIED. Further, the Court REMANDS this case to the Commissioner with instructions to award Plaintiff disability benefits to which he is entitled under the Social Security Act.

IT IS SO ORDERED.