Linda HOLLINS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

Civ.A. No. 2:00–CV–349.

United States District Court, S.D. Ohio, Eastern Division.

March 12, 2001.

---

Daniel Lee Manring, Manring and Farrell, Columbus, OH, for plaintiff.

Randall Eugene Yontz, U.S. Attorney's Office, Columbus, OH, for defendant.

## OPINION AND ORDER

SMITH, District Judge.

Plaintiff Linda L. Hollins filed this action seeking review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security denying her application for widow's insurance benefits. This matter is now before the Court on the cross-motions of the parties for summary judgment.

Plaintiff applied for widow's benefits on October 17, 1994, alleging that she has been disabled since March 1 st of that year as a result of back and leg pain and illiteracy. In order to qualify for widow's insurance benefits, plaintiff must establish that she became disabled sometime during the period between her 50th birthday and the seventh year following the death of her spouse. 42 U.S.C. § 402(e)(1)(B). In this case, that period extended from August 1994 to August 1999.

Following an administrative hearing, an administrative law judge determined that plaintiff was not disabled because, despite her borderline intellectual functioning, major depression, and recurrent back and leg pain due to probable strain or mild arthritis, she nevertheless had the residual functional capacity to perform simple, repetitive, low-stress jobs that required no more than light exertion, and that did not require reading or writing, more than limited contact with supervisors and coworkers or concentration on a single task for more than 15 minutes at a time. Plaintiff thereafter sought review in this Court. *Linda L. Hollins v. Kenneth S. Apfel,* C–2–97–352 (S.D.Ohio). On January 14, 1998, this Court remanded the action to the Commissioner for further proceedings pursuant to sentence 4 of 42 U.S.C. § 405(g). Specifi-

cally, the matter was remanded for consideration of whether or not plaintiff's mental impairment equalled Listing 12.05C and of plaintiff's claim of illiteracy. *Id., Report and Recommendation,* at 7–8 (November 26, 1997).

Following remand, the administrative law judge rejected his previous finding that plaintiff was limited to only a reduced range of light work, explaining that that finding was based on inappropriate, nonmedical, considerations and limited objective findings and treatment history. *A.R.* 173–74. Although the administrative law judge referred plaintiff to a consultative evaluation, she declined to participate in such evaluation, based on advice of counsel. *A.R.* 252–53, 266.

In his decision on remand, the administrative law judge found that plaintiff suffers the severe non-exertional impairments of borderline intellectual functioning, a reading disorder, an adjustment disorder with depressed mood, and a personality disorder not otherwise specified; he also found that plaintiff does not suffer a severe physical impairment. Because, according to the administrative law judge, plaintiff's non-exertional impairments do not preclude the performance of substantial gainful activity, the administrative law judge concluded that plaintiff was not disabled. It is from that decision that plaintiff now appeals.

Plaintiff was born August 28, 1944. She completed eight grades of formal education in regular classes, *A.R.* 219, and has no prior relevant work experience. *A.R.* 213. The Court will not recount the administrative record generated prior to the order of remand, but instead incorporates by reference the *Report and Recommendation,* which appears at *A.R.* 193–201.

In November 1998, Charles E. Merrill, D.O., plaintiff's treating physician, reported that plaintiff suffers from depression, anxiety, and lumbar pain, although the conditions were stable with treatment. *A.R.* 228. Dr. Merrill recommended a psychological evaluation, *Id.,* and indicated that there was decreased range of motion of the back. According to Dr. Merrill, plaintiff could frequently lift and carry up to 20 pounds, *A.R.* 229, and could stand or walk no more than 4 hours throughout an 8–hour workday, without interruption, but was unlimited in her ability to sit. *Id.* Plaintiff also had a moderate limitation in her ability to bend.

In January 1999, Susan W. West, Ph.D., performed a psychological evaluation of the plaintiff at the request of the state agency. Plaintiff's affect was appropriate and her mood was euthymic with underlying features of depression. *A.R.* 234. She reported thoughts of suicide but denied suicidal ideation or intent. She also reported sleep problems and bouts of tearfulness. *Id.* Plaintiff was alert and oriented to time, place, person and situation. Insight and judgment were appropriate. On the WAIS–III, plaintiff achieved a verbal I.Q. score of 68, a performance I.Q. score of 79, and a borderline I.Q. score of 71. The doctor stated that the scores

> are not considered to be a valid and reliable measure of her current intellectual and cognitive functioning. It would be estimated that her more accurate current level of functioning is in the high borderline to low average range. She has little education and her general fund of knowledge is poor, but she does not appear to have any problems in functioning or carrying out appropriate responsibilities.

*A.R.* 236. On the Wechsler Memory Scale–III, plaintiff achieved an average score of 89. Dr. West detected no memory deficit. *A.R.* 236. The Wechsler Individual Achievement Test disclosed a reading disorder. Dr. West diagnosed an adjustment disorder with mixed emotional features, an undifferentiated somatoform

disorder and a reading disorder, accompanied by a personality disorder, not otherwise specified, with dependent features. Plaintiff's GAF was assessed at 72. According to Dr. West:

... It appears that the claimant would be able to relate appropriately with fellow workers and supervisors. The findings indicate that the claimant would be able to understand, follow and remember simple verbal instructions and directions. She would be able to maintain adequate attention and concentration in order to perform simple repetitive tasks, as well as to maintain adequate persistence and pace, if she chose to do so. The findings indicate that the claimant would have minimal impairment in being able to deal with day to day work activity, given her current cognitive and psychological functioning.

*A.R.* 237.

In September 1999, George Serednesky, Ph.D., reviewed the evidence of record and concluded that the record does not document a mental condition that either meets or equals any of the Listing of Impairments. *A.R.* 239–40.

The supplemental hearing was held on July 19, 1999. Plaintiff, represented by counsel, appeared and testified, as did Julie Morrissey, who testified as a vocational expert. Plaintiff testified that she cannot afford the medication prescribed by Dr. Merrill. She can walk only 1 block and can sit or stand for no more than 30 minutes. She cooks only occasionally, goes shopping no more than 3 times per month, and relies on her son and daughter-in-law, with whom she lives, to perform the housework. She spends a typical day watching television or sitting in the backyard. She performs no yard or garden work. *A.R.* 272–81.

Relying on Dr. Serednesky's opinion, the administrative law judge concluded that plaintiff's mental condition does not equal

the severity described in Listing 12.05C of Appendix I to Subpart P of Regulations No. 4 (the "Listing of Impairments"). Moreover, the administrative law judge found that plaintiff's physical impairments do not compromise her ability to work at any exertional level. He concluded that his earlier finding limiting plaintiff to a reduced range of light exertion, made prior to the order of remand, was erroneous because it was based—not on any medical evidence—but instead on plaintiff's age and general deconditioning, *i.e.,* factors irrelevant to the determination of residual functional capacity. The administrative law judge also relied on plaintiff's failure to participate in the scheduled consultative medical evaluation. *See* 20 C.F.R. § 404.1518 (failure to attend a consultative examination permits an adverse inference to be made concerning a claimant's disability status). Finally, the administrative law judge also concluded that he was bound by neither the doctrine of administrative *res judicata* nor the doctrine of law of the case in connection with his earlier finding regarding plaintiff's residual functional capacity.

From a mental standpoint, the administrative law judge found that plaintiff

lacks the residual functional capacity to:

(1) perform other than simple, repetitive tasks (which includes no requirement to follow detailed or written instructions);

(2) maintain concentration for longer than 15 minutes at a time on a single task (while remaining free to turn her attention to other tasks thereafter);

(3) perform other than low stress job activity (*i.e.,* no jobs involving above average pressure for production);

(4) perform tasks requiring reading or writing skills.

*A.R.* 179. In this regard, the administrative law judge relied primarily on Dr.

West's assessment of plaintiff's ability to perform work-related activities from a mental standpoint. Relying on the testimony of the vocational expert, the administrative law judge found that 7,000 jobs meeting the articulated residual functional capacity assessment would be available to a claimant at the light exertional level, including such jobs as packaging machine operator or small machine operator, and that 8,000 such jobs would be available at the medium exertional level, including such jobs as hand packer or kitchen worker.[1] Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. That decision became final when the Appeals Council declined review on February 12, 2000.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (*en banc*).

In her motion for summary judgment, plaintiff contends, first, that the finding—made by the administrative law judge during the course of the earlier administrative proceedings—that plaintiff is limited to a reduced range of light work is binding on all parties, including the Commissioner of Social Security. That finding is significant because a residual functional capacity of light work, when coupled with a finding of illiteracy in a person over 50 years of age with no prior relevant work history, would mandate a conclusion of disability under the Medical–Vocational Guidelines. Rule 202.09 of Appendix II to Subpart P of Regulations No. 4. Plaintiff's contention in this regard finds no support in the regulations. 20 C.F.R. § 404.955(b).[2] The Social Security Act

---

1. The vocational expert did not use plaintiff's local region in Southeastern Ohio because that region was not representative of the national economy. A.R. 285. The vocational expert also testified that the jobs referred to by her exist in proportionate numbers at the national level. *Id.*

2. 20 C.F.R. § 404.955 provides in pertinent part:

The decision of the administrative law judge is binding on all parties to the hearing **UNLESS** -

(b) you or another party requests a review of the decision by the Appeals Council within the stated time period, the Appeals Council denies your request for review, and you seek judicial review of your case by filing an action in a Federal District Court [emphasis added.]

Of course plaintiff followed this procedure in instituting the earlier case in this Court.

does provide a measure of administrative *res judicata* in 42 U.S.C. § 405(h).[3] However, only final administrative decisions are entitled to this deference. *See, e.g., Drummond v. Commissioner of Social Security,* 126 F.3d 837, 841 (6th Cir.1997); *Dennard v. Secretary of Health and Human Services,* 907 F.2d 598 (6th Cir.1990). The prior judgment of this Court, which reversed the agency's decision under 42 U.S.C. § 405(g) and remanded the action for further proceedings, divested the agency's decision of any such finality under 42 U.S.C. § 405(h).

■ Plaintiff also argues that the doctrine of the law of the case also limited the Commissioner on remand to consideration of only the two issues referred to in this Court's order of remand. Under that doctrine, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). As is perhaps so obvious as to be difficult to perceive, the order of remand issued in the earlier action was a final judgment; this action is not "the same litigation" subject to the doctrine of the law of the case.

■ The doctrine of collateral estoppel, or issue preclusion, precludes the relitigation of facts or issues that were, or could have been, litigated to final judgment between the parties. *See Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir.2000). Application of the doctrine, however, assumes that the parties have had a full and fair opportunity to litigate the issue, which was, furthermore, essential to the prior judgment. *Hammer v. INS,* 195 F.3d 836, 840 (6th Cir.1999), *cert. denied,* 528 U.S. 1191, 120 S.Ct. 1247, 146 L.Ed.2d 105 (2000). As plaintiff concedes, neither party in the earlier action actually litigated the finding that plaintiff was limited to a reduced range of light work. Plaintiff argues that the Commissioner could have litigated this issue in the prior proceeding, an argument which is not entirely persuasive. *See Rogers v. Commissioner of Social Security,* 225 F.3d 659, 2000 WL 799332 *5 (6th Cir.2000) (unpublished). In any event, however, a finding regarding plaintiff's residual functional capacity was not essential to the judgment actually rendered by the Court in the earlier action. *Id.* For all these reasons, then, the Court concludes that the Commissioner did not err when, on remand, the administrative law judge reconsidered the issue of plaintiff's residual functional capacity.

■ Plaintiff also argues that the administrative law judge failed to incorporate the appropriate limitation on plaintiff's ability to concentrate into the hypothetical posed to the vocational expert. In a Psychiatric Review Technique Form ["PRTF"], *A.R.* 185–88, the administrative law judge indicated that plaintiff "often suffers deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. . . ." *A.R.* 188. At the supplemental administrative hearing, plaintiff's counsel asked the vocational expert to assume this limitation, defining "often" as "approximately one third of the time," *i.e.,* "a person is off task a

---

Moreover, 20 C.F.R. § 404.983 makes clear that, following judicial remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision of your case."

**3.** (h) Finality of Commissioner's decision

The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. . . .

third of the time, not able to concentrate on anything." *A.R.* 287. In response, the vocational expert testified that such a claimant could perform no job. *A.R.* 288. In her motion for summary judgment, plaintiff contends that the administrative law judge erred in failing to incorporate this limitation into the hypothetical posed to the vocational expert.

The hypothetical posed by the administrative law judge to the vocational expert, and in response to which the vocational expert testified that there exist a significant number of jobs that such a claimant could perform, included the following:

> Limited to simple, repetitive tasks, which includes not having to follow complex, detailed or written instructions. No[t] required to maintain concentration on any one single task for more than 15 minutes at a time, but remaining free to turn his or her attention to other tasks thereafter. Jobs that one would generally characterize as low-stress in nature, that is, no above average pressure for production and limited or occasional contact only with members of the public, supervisors and co-workers.

*A.R.* 286. In response, as previously noted, the vocational expert testified that such a claimant could engage in substantial gainful activity which exists in significant numbers in the national economy. In his decision, the administrative law judge specifically found that plaintiff had the residual functional capacity from a mental standpoint to "maintain concentration for [no] longer than 15 minutes at a time on a single task (while remaining free to turn her attention to other tasks thereafter)." *A.R.* 179. He based this finding on Dr. West's psychological assessment, in which she stated that plaintiff "would be able to maintain adequate attention and concentration in order to perform simple and repetitive tasks, as well as maintain adequate persistence in pace, if she chose to do so." *A.R.* 237. Under these circumstances, the Court concludes that the residual functional capacity assessment found by the administrative law judge is supported by substantial evidence in the record and provided a proper basis for the hypothetical posed to the vocational expert. *See Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). Regardless of the fact that the PRTF characterized plaintiff's lapses in concentration as "often," and regardless of the definition that plaintiff's counsel chose to impose upon the term "often," the Court concludes that there is substantial support in the record for the administrative law judge's specific finding in this regard. *See also Gieseking v. Secretary of Health and Human Services,* 25 F.3d 1048, 1994 WL 228239 *7 (6th Cir.1994) (unpublished).

In short, and having carefully considered the record in this action, the Court concludes that the decision of the Commissioner of Social Security is supported by substantial evidence and must be affirmed.

Plaintiff's motion for summary judgment is DENIED; the Commissioner's motion for summary judgment is GRANTED. The decision of the Commissioner of Social Security is AFFIRMED and this action is hereby DISMISSED.